**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PETER GABIOLA, ANTONIO HAMMOND, on behalf of themselves and all other similarly situated individuals,<br><br>   Plaintiffs,<br><br>vs.<br><br>MUGSHOTS.COM, LLC, a Delaware Limited Liability Company; UNPUBLISH, LLC, a Florida Limited Liability Company; UNPUBLISH, LLC, a Wyoming Limited Liability Company; HAMMERMILL & MASTERSON LLC d/b/a "Unpublisharrest.com," "Mugshots.com," and "Unpublishingpartners.com," a Wyoming Limited Liability Company; HAMMERMILL & MASTERSON LLC d/b/a "Unpublisharrest.com," "Mugshots.com," and "Unpublishingpartners.com," a Florida Limited Liability Company; THOMAS KEESEE; MARC GARY EPSTEIN; ARI EPSTEIN; MICHAEL ROBERTSON a/k/a MICHAEL J. ROBERTSON; and UNPUBLISHING SERVICES, LLC, a Wyoming Limited Liability Company,<br><br>   Defendants. | No. 16-cv-02076<br><br>Honorable Judge<br>Sharon Johnson Coleman |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FILED BY DEFENDANTS THOMAS KEESEE,
<u>MARC GARY EPSTEIN AND HAMMERMILL & MASTERSON LLC</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ...............................................................................................................1

FACTUAL ALLEGATIONS ..............................................................................................2

ARGUMENT .......................................................................................................................5

I.    The Standard For Rule 12(b)(6) Motions ...............................................................5

II.   The Complaint Must Be Dismissed For Improper Block Pleading ........................5

III.  The First Amendment Prohibits Application of Federal and State Statutes
      To Punish And Restrain The Dissemination of Public Arrest Records ..................6

IV.   All of Plaintiffs' Claims are Barred by the Communications Decency Act...……………8

V.    Plaintiffs Can Prove No Set of Facts to Support Their Claims Under
      The ICFA and Therefore Counts II and III Should Be Dismissed With Prejudice .............12

      A.    The Complaint Fails to State a Claim under the ICFA...............................12

      B.    To Recover Under ICFA for Alleged Reputational Injury Caused by the
            Dissemination of Public Arrest Records, Plaintiffs Must, But Cannot,
            Prove That The Arrest Records Are False and Published With Actual Malice..........13

VI.   Plaintiffs Can Prove No Set of Facts to Support Their Claims Under IRPA
      and Therefore Count I Should Be Dismissed With Prejudice ..............................15

      A.    The IRPA Claim Fails Because the Arrest Photos Are Not Used
            to Endorse Any Product Or Service................................................................15

      B.    The Publication of Arrest Photos Is Exempted From Liability Under IRPA ..............17

CONCLUSION..................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. City of Indianapolis,* 742 F.3d 720 (7th Cir. 2014)..........................................5

*Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290 (11th Cir. 2008) ......................6

*Bartnicki v. Vopper,* 532 U.S. 514 (2001) ...............................................................8, 17

*Beaman v. Souk,* 2011 WL 832506, at *15 (C.D. Ill. Mar. 3, 2011) ................................6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007).................................5

*Best v. Berard,* 776 F.Supp.2d 752 (N.D. Ill. 2011) ..........................................6, 17, 18

*Black v. Google Inc.,* No. 10-02381 CW, 2010 WL 3222147
(N.D. Cal. Aug. 13, 2010)…………………………………………………………....9

*Blair v. Nevada Landing P'ship,* 369 Ill. App. 3d 318, 859 N.E.2d 1188 (2006)………………..15

*Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998)................................................10

*Boule v. Hutton,* 328 F.3d 84 (2d Cir. 2003) ...............................................................6

*Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir. 2003).................................9

*Carafano v. Metrosplash.com Inc.,* 207 F. Supp. 2d 1055 (C.D. Cal. 2002) ...............13

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,*
519 F.3d 666 (7th Cir. 2008) ......................................................................................9

*Connick v. Myers,* 461 U.S. 138, 103 S. Ct. 1684 (1983)…………………………………….7

*Cox Broad. Corp. v. Cohn,* 420 U.S. 469 (1975)....................................................1, 6

*Doe v. Bates,* No. 5:05-CV-91-DF-CMC,
2006 WL 3813758 (E.D. Tex. Dec. 27, 2006)...........................................................10

*Fla. Star v. B.J.F.,* 491 U.S. 524, 109 S. Ct. 2603 (1989) ........................................7, 8

*Foretich v. Advance Magazine Publishers, Inc.,* 765 F. Supp. 1099 (D.D.C. 1991)……………13

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive B.D. of Culinary
Workers,* 542 F.2d 1076 (9th Circuit. 1976)…………………………………………………8

*Garrison v. Louisiana*, 379 U.S. 64, 85 S. Ct. 209 (1964)…………………………………………7

*Gates v. Discovery Commc'ns, Inc.*, 101 P.3d 552 (Cal. 2004)..................................................7, 14

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997)…………….1

*Global Royalties, Ltd. v. Xcentric Ventures, LLC*,
544 F. Supp. 2d 929 (D. Ariz. 2008) ...........................................................…….10

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009)…………………………...9

*GW Equity LLC v. Xcentric Ventures LLC*,
No. 3:07-CV-976-O, 2009 WL 62173 (N.D. Tex. Jan. 9, 2009)..................................10

*Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993) ...................................1, 17

*Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46 (1988). .........................................13

*Klayman v. Zuckerberg,* 753 F.3d 1354 (D.C. Cir. 2014) ........................................11

*Landmark Commc'ns, Inc. v. Virginia*,
435 U.S. 829, 98 S. Ct. 1535 (1978)...........................................................7, 8

*Martin v. Hearst Corp.*, 777 F.3d 546 (2nd Cir. 2015)........................................14

*McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873 (7th Cir. 2012)...............................5

*N.Y. Times Co. v. Sullivan,* 376 U.S. 254 (1964)..........................................8, 13

*Obsidian Fin. Group, LLC. v*. Cox, 740 F.3d 1284 (9th Cir. 2014) ...............................6

*Okla. Publ'g. Co. v. Dist. Court In & For Okla. Cnty.*,
430 U.S. 308, 97 S. Ct. 1045 (1977)............................................................8

*Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 776 N.E.2d 151 (2002). ...........................12

*Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29 (1971)............................................6

*Rosetta Stone Ltd. v. Google Inc.*, 732 F. Supp. 2d 628 (E.D. Va. 2010).....................10

*Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 776 N.E.2d 693 (2002)..................16, 17

*Small Justice LLC v. Xcentric Ventures LLC*,
99 F. Supp. 3d 190 (D. Mass. 2015) ............................................................12

*Smith v. Daily Mail Publ'g. Co.*, 443 U.S. 97 (1979)...........................................7

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

## CASES

*Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union,*
585 F. Supp. 2d 815 (E.D. Va. 2008) ..............................................................13

*Stayart v. Yahoo! Inc.,* 651 F. Supp. 2d 873 (E.D. Wis. 2009)......................11

*Stransky v. Cummins Engine Co.,* 51 F.3d 1329 (7th Cir. 1995)....................14

*Suburban Buick, Inc. v. Gargo,* 2009 WL 1543709 (N.D. Ill. May 29, 2009) ................................5

*Szumny v. Am. Gen'l Fin., Inc.,* 246 F.3d 1065 (7th Cir. 2001)......................5

*Tierney v. Advocate Health & Hosps. Corp.,*
797 F.3d 449 (7th Cir. 2015) ...........................................................................5

*Toney v. L'Oreal USA, Inc.,* 406 F.3d 905 (7th Cir. 2005). ...................15, 16

*Unelko Corp. v. Rooney,* 912 F.2d 1049 (9th Cir. 1990)...............................13

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
425 U.S. 748, 96 S. Ct. 1817 (1976)................................................................7

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771 (7th Cir. 1994) ...................................5

*Wakefield v. Citizens Information Associates, LLC,*
13-cv-23754 (August 26, 2014 S.D.F.L)…………………….........................................16

*Zglobicki v. Travel Channel, LLC,*
No. 11 C 6346, 2012 WL 725570 (N.D. Ill. Feb. 2, 2012)..........................18

## STATUTES

47 U.S.C. § 230....................................................................2, 8, 9, 10, 11

765 ILCS 1075/5...............................................................................15

765 ILCS 1075/35.............................................................................17

## OTHER AUTHORITIES

*Restatement (Second) of Torts,* § 652D ...................................................7, 17

iv

## INTRODUCTION

The core contention of the removed putative class action complaint ("Complaint") (Doc. 1-1) is that the availability of public arrest records on the Internet, in this case on mugshots.com, injured the reputations, and consequently the employment prospects, of the two named Plaintiffs and misappropriated the commercial value of their public arrest photos.  Complaint (Doc. 1-1) "Preliminary Statement" at pp. 2-3.  The alleged cause of their injuries—public arrest information and booking photos originating from government sources and available on mugshots.com—are public records that concern matters of the highest public interest and concern.  The dissemination of such information has long been recognized as protected First Amendment activity.  *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) (when "true information is disclosed in public... documents open to public inspection, the press cannot be sanctioned for publishing it"); *see also Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-32 (7th Cir. 1993).  Plaintiffs seek nothing less than to unconstitutionally penalize and restrain the dissemination of truthful matters of public concern.  *See e.g.,* Complaint (Doc. 1-1) at pp. 46, 49, 51 (requesting damages and a "permanent injunction [against] posting" the public arrest records).

Plaintiffs seek to circumvent these settled constitutional strictures by alleging that the Illinois Right of Publicity Act ("IRPA") (Count I), the Illinois Consumer Fraud Act ("ICFA") (Counts II and III), and the Federal Fair Credit Reporting Act ("FCRA") (Counts V, VI, and VII) have all been violated.[1]  For reasons detailed below, the allegations of the Complaint itself establish that those claims all fail as a matter of law and should be dismissed with prejudice.  *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) ("Dismissal of an action under [Rule 12(b)(6)] is warranted if the plaintiff can prove no set of

---

[1] The Complaint does not contain a Count IV.

1

facts in support of its claims that would entitle it to relief." ).  The Illinois statutes alleged to have been violated cannot constitutionally be construed to apply to injuries allegedly caused by the dissemination of public arrest records.  Properly construed, those statutes have not been violated. But even if that were not true, all of Plaintiffs' claims fail as a matter of law because the First Amendment and the Communications Decency Act, 47 U.S.C. § 230(c)(1) both preclude liability for making available the public arrest records on mugshots.com—the only alleged source (and the proximate cause) of Plaintiffs' alleged injuries.

## FACTUAL ALLEGATIONS

Mugshots.com ("mugshots.com" or the "Website") makes available and provides a search engine for public arrest records replete with the arrestee's booking photo.  Complaint (Doc. 1-1), ¶ 58.  The booking photographs and arrest information made available on the Website originate from governmental sources and are all lawfully obtained either "from department of corrections websites," *id*. ¶ 97, through Freedom of Information Act requests, or purchased "from pubic record databases maintained by government agencies[.]"  *Id*., ¶ 102.

Mugshots.com is essentially a clearinghouse and search engine for public arrest records. It is a passive conduit for public arrest information originating from governmental sources; once the records are obtained, they are simply "scan[ned] and upload[ed]" to the Website.  *Id*., ¶ 105. Mugshots.com exercises no editorial control over the public arrest information other than gathering and making it available; mughots.com "take[s] little or no action [to edit the] information posted on Mugshots.com[.]"  *Id*., ¶ 110.  Mugshots.com does not "update the information and photographs posted to Mugshots.com."  *Id*., ¶ ¶ 106.  As such, the arrest information constitutes true historical facts, which may as the result of the passage of time

become "out of date[.]" *Id*., ¶ 107.  There is no allegation, nor could there be, that any monetary fee is charged to access the arrest records and booking photos.

In addition to being a clearinghouse and search engine for public arrest records, mugshots.com is a news outlet that publishes "'news stories' about arrestees[.]" *Id*., ¶ 134. Mugshots.com "publish[es] over 1,000 crime stories every month." *Id*., ¶ 139.  As is the case with most specialty news organizations, indeed any website, mugshots.com employs various methods to drive traffic to the Website. *Id*., ¶¶ 130, 132, 135, 140.  As with most websites, including the websites of any traditional news organization, "advertising space [is sold] on" the Website. *Id*., ¶ 116.

The Complaint alleges that Mugshots.com offers to remove or correct the arrest information for a fee, *Id*., ¶ 149, but it is also absolutely unequivocal that neither Plaintiffs nor any members of the purported classes have paid, offered to pay, or been injured by paying such a fee or by the possibility of paying such a fee. *Id*., ¶¶ 296- 328, 330, 333.  As a result, this case does not involve any issues about whether any statute prohibits, or could constitutionally prohibit, such removal services, or the solicitation of such removal services.

Plaintiffs allege injury to their reputations as a result of the availability of their arrest and conviction information on the Website.  Plaintiff Gabiola alleges that he has been denied employment opportunities as a result of prospective employers learning of his extensive criminal history on the Website.  *Id*., ¶¶ 303-05.  On one such alleged occasion, when his employer learned of Gabiola's criminal history on mugshots.com, the employer "immediately terminated Gabiola's employment." *Id*., ¶¶ 302-04.  As a result, Gabiola claims to have suffered "actual and ongoing harm to [his] employment prospects[.]" *Id*., ¶ 316.  Plaintiff Antonio Hammond complains about similar injuries alleged to result from the availability of public arrest

3

information on the Website. *Id*., ¶ 323. Mr. Hammond "has no fewer than five arrest pages on mugshots.com." *Id*., ¶ 318. Mr. Hammond also complains that he does not have the financial resources to remove his arrest information from the Website. *Id*., ¶ 322. However, he does not allege any injury caused by or associated with the Website's removal service. His only alleged injuries are entirely related to the publication of information about his arrests and convictions.

Although Plaintiffs' complain that the Website offers advertising space and that the arrest information may be removed upon request for a fee, neither the fact of advertising nor the possibility of paying a fee to remove information from the Website have any nexus to either Plaintiff, or to any class they purport to represent, or to their alleged injuries. The Complaint is crystal clear that Plaintiffs' alleged injuries are proximately caused by the availability of the public arrest information and arrest photos, not any other feature of the Website. For example, Mr. Gabiola's reputation is damaged by the fact that he was arrested and convicted of multiple crimes. That prospective employers learn his history because it is available on the Internet has nothing to do with the fact that they may have learned about it on a Website that advertises or contains a removal service.

At best, Plaintiffs allegations amount to the unremarkable contention that the Website made available Plaintiffs' public arrest records and potential employers found the information material to its hiring decisions. Strip the Website of the removal service and the result would be the same—a criminal record would still be a public record, information about it would still be on the Website, its availability would still be protected by the First Amendment, *see* section III, *infra*, and the information about Plaintiffs' criminal histories would still allegedly cause the alleged "harm to [Plaintiffs'] employment prospects." *Id*., ¶ 316.

4

## ARGUMENT

### I.    The Standard for Rule 12(b)(6) Motions.

"To survive dismissal, the complaint must allege sufficient facts to 'state a claim to relief that is plausible on its face.'" *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). Plaintiffs well-pled facts are accepted as true and reasonable inferences construed in their favor. *Id.* "But 'allegations in the form of legal conclusions are insufficient.'" *Id.* (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012)). "So are 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)). A complaint should be dismissed with prejudice where, as here, it is clear that the non-movant can prove no set of facts supporting its claims for relief. *Szumny v. Am. Gen'l Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001).

### II.    The Complaint Must Be Dismissed for Improper Block Pleading.

The Complaint uniformly, and improperly, lumps together all individuals and limited liability companies as "Defendants." It makes no attempt to differentiate between either related or unrelated companies or between different individuals. Most importantly, it fails to specify which company or individual did or said what, when, or where, rendering it impossible for any Defendant or the Court to know what Plaintiffs claim each Defendant did. This by itself requires dismissal of the Complaint in its entirety. *See Suburban Buick, Inc. v. Gargo*, 2009 WL 1543709, at *4 (N.D. Ill. May 29, 2009) (complaint's "many broad references to 'Defendants'" were "wholly inadequate to put defendants on notice of the conduct alleged"); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("We previously have

rejected complaints that have 'lumped together' multiple defendants"); *Beaman v. Souk*, 2011 WL 832506, at *15 (C.D. Ill. Mar. 3, 2011) (failure to give "necessary individualized attention" to each defendant violated Rule 8). All of Plaintiffs' claims should be dismissed on this basis.

### III. The First Amendment Prohibits Application of Federal and State Statutes to Punish And Restrain the Dissemination of Public Arrest Records.

Plaintiffs' alleged damages—whether framed as reputational harm (*i.e.*, diminished employment prospects) or statutory damages under IRPA—all allegedly flow from the availability of public arrest records on the Website, not from the Website's advertising or removal service. Application of any statute to penalize or prohibit the dissemination of such information is constitutionally prohibited as a violation of the First Amendment. For that reason alone, Plaintiffs' entire lawsuit should be dismissed with prejudice.

Arrest records are without question matters "of legitimate concern to the public[.]" *Cox Broad. Co. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029, 1044 (1975); *see also Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 45 (1971) (plurality) ("[P]olice arrest of a person … clearly constitutes an issue of public or general interest."), *abrogated on other grounds by* 418 U.S. 323 (1974). Courts, including courts in this Circuit, have held that an "arrest and its surrounding circumstances [convey] truthful information on matters of public concern protected by the First Amendment." *Best v. Berard*, 776 F. Supp. 2d 752, 758 (N.D. Ill. 2011); *see also Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298 (11th Cir. 2008) (holding that accusations of "alleged violations of federal gun laws" were speech on "a matter of public concern"); *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (holding that allegations of "fraud in the art market" involve "a matter of public concern"); *Obsidian Fin. Group, LLC. v. Cox*, 740 F.3d 1284 (9th Cir. 2014) (holding allegation of fraud is matter of public concern).

6

Because the information at issue constitutes truthful matters of public importance, the operators of the Website have an unfettered constitutional right to disseminate the information. But, perhaps even more importantly, the public at large has the First Amendment right to access and receive the information available on the Website. "Freedom of speech presupposes a willing speaker. But where a speaker exists ... the protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756, 96 S. Ct. 1817, 1823 (1976); *Connick v. Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684, 1689 (1983) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.") (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S. Ct. 209, 215-216 (1964); *see also Restatement (Second) of Torts*, § 652D cmt. f ("Those who commit crime or are accused of it ... may make every possible effort to avoid [publicity], but they are nevertheless persons of public interest, concerning whom the public is entitled to be informed.").

It is firmly established that there is no governmental interest that can justify restraining or punishing the dissemination of publicly available criminal records. "[A]ny state interest in protecting for rehabilitative purposes the long-term anonymity of former convicts [is not] 'of the highest order[.]'" *Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679, 693, 101 P.3d 552, 560 (2004) (collecting cases); *see also Smith v. Daily Mail Publ'g. Co.*, 443 U.S. 97, 104 (1979) (holding that state's interest in protecting the anonymity of juvenile defendants did not justify punishing newspapers for truthfully reporting those names); *Fla. Star v. B.J.F.*, 491 U.S. 524, 525, 109 S. Ct. 2603, 2604 (1989) (holding that state's interest in protecting privacy of rape victim insufficient to overcome First Amendment protection for the dissemination of "lawfully obtained truthful information" concerning a matter of public concern); *Landmark Commc'ns, Inc.*

7

*v. Virginia*, 435 U.S. 829, 841, 98 S. Ct. 1535, 1543 (1978) (state's interest in protecting the reputation of its judges and in maintaining the institutional integrity of its courts not sufficient to justify punishing speech involving confidential proceedings of judicial review commission); *Okla. Publ'g. Co. v. Dist. Court In & For Okla. Cnty.*, 430 U.S. 308, 311, 97 S. Ct. 1045, 1047 (1977) (holding publisher could not be held liable for publishing lawfully obtained "name and picture of the juvenile [that] were publicly revealed in connection with the prosecution of the crime"). *See also Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards.").

The state and federal statutes relied upon by Plaintiffs cannot be constitutionally applied to penalize or restrain the publication of criminal records. As the Supreme Court has made crystal clear, "once the truthful information [is] publicly revealed or in the public domain the court [can]not constitutionally restrain its dissemination." *B.J.F.*, 491 U.S. at 535 (internal citations and quotation marks omitted). All of Plaintiffs' claims should be dismissed with prejudice for this reason alone.[2]

## IV.   All of Plaintiffs' Claims Are Barred by the Communications Decency Act ("CDA").

All of Plaintiffs' claims seek to hold Defendants liable for making available third party content that originates from governmental sources. However, any claim for injuries caused by the dissemination of public records originating from governmental sources is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230). In enacting the

---

[2] It is of vital, constitutional importance that this case be dismissed with prejudice at this stage of the proceedings in order to avoid "chilling effects" on protected First Amendment activity. The threat of a class action litigation seeking millions of dollars in federal and state statutory damages will have an extraordinary chilling effect on companies that otherwise would expand access to publicly available information. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 294-95 (1964) (discussing how civil litigation may impair protected First Amendment activity); *see also e.g.*, *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive B.D. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Circuit. 1976) ("where plaintiff seeks damages or injunctive relief or both for conduct which was *prima facia* protected by the First Amended [there is a] danger that the mere pendency of the action will chill the exercise of First Amendment rights").

CDA, Congress sought to "promote the continued development of the Internet and other interactive computer services and other interactive media," and to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b). As such, making available arrest records originating from third party governmental sources is immune from federal or state liability under the CDA. *See e.g., Black v. Google Inc.*, No. 10-02381 CW, 2010 WL 3222147 (N.D. Cal. Aug. 13, 2010) (dismissing federal and state claims due to CDA immunity), *aff'd*, 457 F. App'x 622 (9th Cir. 2011); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) (same).

Section 230 protects interactive computer service providers, such as the Website publisher, against liability arising from "publishing" third party content, here the public arrest information. *See*, *e.g.*, *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 668 (7th Cir. 2008), as amended (May 2, 2008) (affirming judgment for website that displayed discriminatory housing ads posted by third parties). The Act directs that "[n]o provider or user of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

The CDA creates broad immunity for the posting of content originating from third parties. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-1125 (9th Cir. 2003) (stating that "reviewing courts have treated § 230(c) immunity as quite robust" and finding CDA immunity for website against claims of misappropriation of right of publicity and invasion of privacy). Indeed, a publisher's immunity for posting third party content is not lost even if the publisher takes an active role in acquiring the third party content. "Congress has made a . . .

9

policy choice by providing immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others." *See Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998).

CDA protection also cannot be withheld because mugshots.com may profit or otherwise receive payment in connection with the dissemination of content generated by government entities. *See*, *e.g.*, *Rosetta Stone Ltd. v. Google Inc.*, 732 F. Supp. 2d 628, 633 (E.D. Va. 2010) (holding that Section 230 shielded Google from liability for content created by a third party even though Google received payment when users viewed content), *aff'd*, 676 F. 3d 144 (4th Cir. 2012); *GW Equity LLC v. Xcentric Ventures LLC*, No. 3:07-CV-976-O, 2009 WL 62173, at *13 (N.D. Tex. Jan. 9, 2009) (rejecting the claim that a website operator was not entitled to Section 230 immunity because it profited from third party content); *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) (stating that website operator's use of third-party content for its own financial gain was legally irrelevant); *see also Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006) (emphasizing that there was no showing that "Congress intended the question of immunity to turn on how the internet service provider earns its revenue, whether by subscription fees or by advertising").

Making available public records and providing a search engine to locate those records, all of which originate from government sources, is precisely the type of service Congress enacted the CDA to protect. Section 230(c)(1) applies whenever three elements are satisfied: (1) the defendant is "a provider . . . of an interactive computer service"; (2) the plaintiff's claims seek to "treat []" the defendant as the "publisher or speaker" of allegedly harmful or unlawful information; and (3) the information at issue was "provided by another information content provider." 47 U.S.C. § 230(c)(1). All three elements are satisfied here.

First, the Website is an "interactive computer service." An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C.A. § 230(f)(2). As the Complaint admits: "'Mugshots.com is a search engine for Official Law Enforcement records, specifically arrest records and booking photographs, mugshots.'" *Id.*, ¶178 (*quoting* Website). Courts construe the term interactive computer service broadly and have repeatedly held that search engines meet the statutory definition. *See e.g., Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 884 (E.D. Wis. 2009), aff'd, 623 F.3d 436 (7th Cir. 2010). Simply put, the Website "qualifies as an interactive computer service because it is a service that provides information to 'multiple users' by giving them 'computer access … to a computer server[,]' namely the servers that host its … website." *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) *cert. denied*, 135 S. Ct. 680, 190 L. Ed. 2d 391 (2014).

Second, this lawsuit seeks to treat Defendants as the "publisher" of the arrest information and to punish Defendants for making those public records available.

Third, the Complaint itself confirms without qualification that the public records available on the Website constitute "information provided by another information content provider[.]" 47 U.S.C. § 230(c)(1). The arrest information located on the Website is acquired "from department of corrections websites[.]" Complaint (Doc. 1-1) ¶¶ 96-97, 100-102. Once the records are obtained, they are simply "scan[ned] and upload[ed]" to the Website. *Id.*, ¶ 105. "Defendants make little or no effort to update the information… posted to mugshots.com." *Id.*, ¶ 106. Stated differently, the Website is a mere conduit or clearinghouse for unaltered arrest information and booking photos originating from third party governmental sources.

11

All of Plaintiffs' claims should be dismissed with prejudice because mugshots.com cannot be held liable for making available content originating from third party governmental sources.

**V.      Plaintiffs Can Prove No Set of Facts to Support Their Claims Under The ICFA and Therefore Counts II and III Should Be Dismissed With Prejudice.**

**A.      The Complaint Fails to State A Claim under the ICFA.**

To recover under the ICFA (including the "Mugshots Act" provisions), a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade and commerce; and (4) actual damages to the plaintiff (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151 (2002). None of these elements can be satisfied, but the most glaring deficiency is that Plaintiffs cannot prove any set of facts demonstrating that their alleged injuries were proximately caused by any unlawful act.

To satisfy the "actual damages" requirement, the Complaint alleges the Website causes actual harm to Plaintiffs' employment prospects. Doc. 1-1, ¶¶ 316, 323. But, as the Complaint makes clear, that harm could only be proximately caused by the dissemination of the public arrest records, which is protected First Amendment activity and further immunized from liability under the CDA, and therefore that dissemination cannot an unlawful act under the ICFA. *See* Section III and VI., *supra*. As such, Plaintiffs have not alleged any injury proximately caused by any purported unfair, deceptive, or unlawful act. *See e.g., Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 200-01 (D. Mass. 2015) amended, No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015) (dismissing consumer fraud claim under a similar state consumer fraud statute where injury was proximately caused by conduct immunized by the CDA, not any unlawful act). The ICFA claims should be dismissed for this reason alone.

12

**B.** **To Recover Under ICFA for Alleged Reputational Injury Caused by the Dissemination of Public Arrest Records, Plaintiffs Must, But Cannot, Prove That the Arrest Records Are False and Published With Actual Malice.**

Plaintiffs' ICFA claims are disguised defamation claims seeking damages for reputational injury allegedly caused by the dissemination of truthful matters of public concern. Complaint (Doc. 1-1) at p.3 (alleging that Plaintiffs' action "seeks to … vindicate the … reputations of the Plaintiff[s] and members of the classes").[3] However, Plaintiffs cannot avoid the stringent constitutional limitations typically applied to defamation claims simply by re-casting their claims as statutory causes of action under the ICFA. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988). Courts do not permit plaintiffs, through "creative pleading," to invoke other causes of action as a vehicle for "end-running [the] requirements of defamation law." *Foretich v. Advance Magazine Publishers, Inc.*, 765 F. Supp. 1099, 1104-06 (D.D.C. 1991); *see also Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991); *Carafano v. Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 1076 (C.D. Cal. 2002) ("constitutional protection does not depend on the label given the stated cause of action, and no cause of action can claim talismanic immunity from constitutional limitations"). Where "reputational damage caused by a publication [is alleged, the plaintiff] must prove that the publication was false and made with actual malice [*i.e.*, with reckless disregard as to the publications truth or falsity] to recover, no matter what label is applied to the underlying claim." *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 585 F. Supp. 2d 815, 821 (E.D. Va. 2008) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

---

[3] Such reputational harm results solely from the dissemination of the public arrest and conviction records. No other alleged aspect of the Website—not the advertising, not the alleged removal service—could possibly have proximately caused Plaintiffs alleged reputational injuries. Stated differently, even if the Website contained no advertising or removal service, arrest and conviction information would still be posted, prospective employers would still be able to locate the information, and plaintiffs' employment prospects would allegedly still suffer.

Plaintiffs can prove no set of facts demonstrating falsity (or malice) because the information contained in the criminal records constitutes truthful historical facts as a matter of law. The Complaint makes no allegation, nor could it, that any of the criminal records were false when initially made available by government and law enforcement agencies. Mr. Gabiola, for example, does not complain that he was never on parole, only that he currently is not and his criminal record on the Website is not up to date. Complaint (Doc. 1-1) ¶ 300. However, a website publisher has no obligation to update. *See Gates v. Discovery Commc'ns, Inc.*, 101 P.3d 552 (Cal. 2004) (holding that a publisher could not be held liable for reporting on plaintiff's 13-year-old criminal record). That historical facts may become out-of-date do not make them false:

> The news reports at issue in this case, however, do not imply any fact about [the plaintiff] that is not true. They simply state that she was arrested and criminally charged, both of which [the plaintiff] admits are true. Reasonable readers understand that some people who are arrested are guilty and that others are not. Reasonable readers also know that in some cases individuals who are arrested will eventually have charges against them dropped. ***Reporting [the plaintiffs] arrest without an update may not be as complete a story as [the plaintiff] would like, but it implies nothing false about her.***

*Martin v. Hearst Corp.*, 777 F.3d 546, 553 (2nd Cir. 2015) (emphasis added) *cert. denied*, 136 S. Ct. 40 (2015).[4] As such, the information contained in the public arrest records constitutes true historical facts that are not rendered false simply by the passage of time. "[T]hat circumstances subsequently change cannot render an historical statement false or misleading." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1332 n.3 (7th Cir. 1995), as amended (Apr. 7, 1995). In

---

[4] *Martin v. Hearst Corp.* is instructive. In that case, the plaintiff was arrested on drug charges. *Id*. at 548. Her arrest was reported in the print and online versions of the local newspapers. *Id*. at 548-549. The state eventually decided not to pursue the charges, a *nolle prosequi* was entered, and plaintiff's arrest records were expunged under Connecticut's Erasure Statute. *Id*. at 549. However, reports of her arrest could still be found on the newspapers' websites. *Id*. Plaintiff sued the newspapers, alleging that once the arrest record was expunged, the arrest was deemed never to have happened; thus, any reports of her arrest were defamatory. *Id*. The district court, which was affirmed on appeal, granted summary judgment in favor of the newspapers, stating, "[t]here is no genuine dispute that the reports of her 2010 arrest in the articles at issue remain as true now as on the date they were first published." *Id*.

sum, Plaintiffs can prove no set of facts demonstrating falsity (or constitutional malice) and therefore cannot, as a matter of law, recover for their purported reputational injury damages caused by the dissemination of information about their arrests, convictions, or parole status.

For the reasons stated above, Counts II and III of the Complaint should be dismissed with prejudice.

## VI. Plaintiffs Can Prove No Set of Facts to Support Their Claims Under IRPA and Therefore Count I Should Be Dismissed With Prejudice.

### A. The IRPA Claim Fails Because the Arrest Photos Are Not Used to Endorse Any Product Or Service.

IRPA codified the common law right of publicity; it is designed to protect the commercial value of a person's identity. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). A claim under the IRPA requires: (1) an appropriation of one's name or likeness; (2) without consent; (3) for a commercial purpose. *See Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 322, 859 N.E.2d 1188, 1191 (2006). The IRPA defines a "commercial purpose" as the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising. 765 ILCS 1075/5. The Website's use of Plaintiffs' booking photos fits none of these categories.

Plaintiffs' IRPA claim fails because the arrest photos are not being used to promote or advertise a product or service; rather, making the arrest photos (and related information) available to the public *is* the service being offered by the Website. As one district court held in dismissing a claim against a different "mugshots" website and under a similar state right of publicity statute:

> Though Plaintiff asserts that his likeness is being used to "promote"
> Citizens' service, he has alleged no facts indicating Citizens has created

15

> the false impression that Plaintiff is promoting or endorsing Citizens'
> websites or some other products. What Defendant provides is public
> access to booking photos of Wakefield and others; the mugshots are not
> being used in a promotional capacity, they are the websites' *raison d'etre*.
> Put another way: Plaintiff's mugshot is not being wrongly associated with
> any product. Plaintiff's mugshot is the product.

*Wakefield v. Citizens Information Associates, LLC*, 13-cv-23754 (August 26, 2014 S.D.F.L)

(unpublished order).[5]

Here, there is neither an alleged "endorsement" by Plaintiffs nor a "product in question"

in this case. "***The basis of a right of publicity claim concerns the message - whether the***

***plaintiff endorses, or appears to endorse the product in question***." *See Toney*, 406 F.3d at 910

(emphasis added). Plaintiffs' IRPA claim fails because it cannot be said that the arrest photos

are being used to endorse any product or service. No reasonable viewer would assume that the

persons in the arrest photos are endorsing mugshots.com's services. If anything, a reasonable

viewer would conclude that the persons in the booking photos would rather not be associated

with the Website.

However, even if the arrest photos are used to promote the news services on

mugshots.com (they are not), Plaintiffs still cannot recover under IRPA. The Illinois courts have

held that even the use of an image to promote a news service is a non-commercial purpose under

the Act:

> Mr. Schivarelli claims that defendants misappropriated his "likeness" for
> commercial purposes in violation of section 30 of the Act. We disagree.
> The promotional announcement featuring Mr. Schivarelli was broadcast,
> not for commercial purposes, but for the noncommercial purpose of
> promoting Ms. Zekman's news reports on WBBM channel 2. As such,
> Mr. Schivarelli's claim for commercial misappropriation is precluded by
> section 35 of the Act. Accordingly, we affirm the dismissal of Mr.
> Schivarelli's commercial misappropriation claim.

---

[5] A copy of the unpublished order in *Wakefield* is attached hereto as Exhibit 1.

*Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 764-65, 776 N.E.2d 693, 701 (2002). Plaintiffs' theory of recovery under IRPA is simply untenable. Under that theory, any governmental agency or any news agency would be liable under IRPA for simply publishing arrest photos on a website that receives advertising revenue. That is not the intent of the statute.

### B. The Publication of Arrest Photos Is Exempted From Liability Under IRPA.

IRPA expressly exempts from its ambit the use of an image for what the statute expressly defines as "non-commercial purposes, including any **news**, **public affairs** or sports broadcast or account, or any political campaign." 765 ILCS 1075/35(b)(2) (emphasis added). Courts construe the exemption broadly to avoid First Amendment infirmity. *See, e.g.*, *Best v. Berard*, 776 F.Supp.2d 752, 758–59 (N.D. Ill. 2011). In *Best v. Berard*, the court held that a television "entertainment program" that truthfully conveyed information about plaintiff's arrest was exempt from an IRPA claim under the rubric of the "public affairs" exemption. 776 F. Supp. 2d at 759. In doing so, the district court held that images concerning an arrest are "without question" matters of public interest and concern exempted under the "public affairs" exemption:

> The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public…
>
> The constitutional prohibition against laws abridging freedom of the press "greatly circumscribes the right even of a private figure to obtain damages for the publication of newsworthy facts about him, even when they are facts of a kind that people want very much to conceal." *Haynes v. Alfred A. Knopf*, 8 F.3d 1222, 1232 (7th Cir. 1993). The Supreme Court has "repeatedly held that if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need ... of the highest order.*" Bartnicki v. Vopper*, 532 U.S. 514, 527–28, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (citations and internal quotation marks omitted)…. The First Amendment's "core purposes" are implicated when the government—either directly or through a legal standard that imposes civil liability—"imposes sanctions on the publication of truthful information of public concern." *Id*. at 533–34, 121 S.Ct. 1753. In such

cases, "privacy concerns give way when balanced against the interest in publishing matters of public importance." *Id*. at 534, 121 S.Ct. 1753.

776 F. Supp. 2d at 757. Precisely the same analysis applies here and requires dismissal with prejudice. *See Zglobicki v. Travel Channel, LLC*, No. 11 C 6346, 2012 WL 725570, at *2 (N.D. Ill. Feb. 2, 2012) (dismissing IRPA claim with prejudice where allegedly misappropriated image concerned "a subject of general interest and of value and concern to the public").

For the reasons set forth above, Count I of the Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: March 22, 2016                                     Respectfully submitted,


                                                          /s/ Michael A. Stick
                                                          One of the Attorneys for these Defendants

Michael A. Stick
Emily G. Rottier Goebel
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois  60602
Telephone: 312-444-9660
Facsimile:  312-444-9286

And

Adam D. Grant
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, Michigan  48226

18

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true copy of the preceding Memorandum in Support of Motion to Dismiss Filed By Defendants Thomas Keesee, Marc Gary Epstein and Hammermill & Masterson LLC was served on March 22, 2016 on all counsel of record, in accordance with Fed. R. Civ. P. 5., Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Berton N. Ring      bring@bnrpc.com
Stuart M. Clarke   sclarkelaw.bnrpc@gmail.com
Adam D. Grant     agrant@dickinsonwright.com


                                        _____/s/ Michael A. Stick_____

534017v1

19