# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PETER GABIOLA, ANTONIO HAMMOND, and JIMMY THOMPSON on behalf of themselves and all other similarly situated individuals, | No. 16-cv-02076 |
| Plaintiffs, | |
| v. | Honorable Judge Sharon Johnson Coleman |
| SAHAR SARID, individually and a/k/a "Michael Robertson"; THOMAS KEESEE, an individual; MARC GARY EPSTEIN, an individual; MUGSHOTS.COM, LLC, a Delaware Limited Liability Company; UNPUBLISH, LLC, a Florida Limited Liability Company; UNPUBLISH, LLC, a Wyoming Limited Liability Company; HAMMERMILL & MASTERSON LLC d/b/a "Unpublisharrest.com," "Mugshots.com," and "Unpublishingpartners.com," a Wyoming Limited Liability Company; and HAMMERMILL & MASTERSON LLC d/b/a "Unpublisharrest.com," "Mugshots.com," and "Unpublishingpartners.com," a Florida Limited Liability Company, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS THOMAS KEESEE, MARC GARY EPSTEIN AND HAMMERMILL & MASTERSON LLC

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................ .iii

INTRODUCTION ...........................................................................................................1

FACTUAL ALLEGATIONS .........................................................................................2

ARGUMENT ..................................................................................................................5

I.     The Standard For Rule 12(b)(6) Motions ...........................................................5

II.    All of Plaintiffs' Claims are Barred by the First Amendment ...............................5

        A.    There is a Constitutional Privilege to Speak on Matters of Public Concern and to Republish Matters Contained in Public Record.........................................................6

        B.    Plaintiffs Cannot Recover for Injuries Caused by Speech on Matters of Public Concern or the Republication of Matters of Public Record.......................................7

        C.    The Public Arrest Photos and Official Records Constitute True, Non-Actionable, Historical Facts as a Matter of Law ......................................................................8

        D.    The Arrest Photos and Records are Not Commercial Speech ...................................10

III.   Plaintiffs' Illinois and Florida Right of Publicity Claims Should be Dismissed ................13

        A.    A Citizen Does Not Need Permission or Authorization to Speak on Matters of Public Concern or to Re-publish Matters Contained in a Public Record........................................................................................13

        B.    The Re-Publication of Arrest Photos is Exempt from IRPA Liability ......................15

        C.    The IRPA Claim Also Fails Because the Arrest Photos are Not Used to Endorse Any Products or Service ...........................................................15

        D.    The Florida Right of Publicity Act ("FRPA") Claim Also Fails Because Re-Publication of the Arrest Photos is Exempt from Liability.........................................16

        E.    The FRPA Claim Also Fails Because the Arrest Photos are Not Being Used to Directly Promote a Product or Service as a Matter of Law ...............................16

i

**TABLE OF CONTENTS**
**(Continued)**

IV.   Plaintiffs' Consumer Fraud Act Claims Under Illinois and Florida Law Fail.................18

    A.   Plaintiffs' Claims Under the Illinois Consumer Fraud Act ("ICFA") Fail.................18

    B.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")
       Cause of Action Fails as a Matter of Law.................19

V.   The Federal Racketeering Claims Fail as a Matter of Law .................21

    A.   Plaintiffs Have Not Suffered a Cognizable RICO Injury .................22

    B.   Attempted Extortion Does Not Confer RICO Standing Because
       It Does Not Satisfy RICO's Concrete Financial Loss Requirement.................24

    C.   The RICO Extortion Claim Fails Because Defendants Did Not Obtain Property from
       Plaintiffs With Their Consent .................24

CONCLUSION.................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ace Pro Sound & Recording, LLC v. Albertson,*
512 F. Supp. 2d 1259 (S.D. Fla. 2007) ............................................25

*Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538 (11th Cir. 1983)................23, 24

*Ad World, Inc. v. Doylestown Twp.,* 672 F.2d 1136 (3d Cir. 1982) ............................................11

*Almeida v. Amazon.com, Inc.,* 456 F.3d 1316 (11th Cir. 2006)............................................16

*Anderson v. Lincoln Ins. Agency, Inc.,* 2003 WL 291928 (N.D. III. Feb. 10, 2003)....................22

*Baptist Hosp., Inc. v. Baker,* 84 So. 3d 1200 (Fla. Dist. Ct. App. 2004) ................................19, 20

*Barrow v. Bristol-Myers Squibb Co.,* No. 96-689-CIV-ORL-19B, ..................................................
1998 WL 812318 (M.D. Fla. 1998) ............................................20

*Barrow v. Bristol Meyers Squibb,* 190 F.3d 541 (11th Cir. 1999)................................................20

*Bates v. State Bar of Ariz,* 433 U.S. 350 (1977) ............................................13

*Bd. Of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469 (1989) ....................................12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................5

*Best v. Berard,* 776 F.Supp. 2d 752 (N.D. Ill. 2011) ............................................6, 9, 15

*Bilotta v. Citizens Info. Associates, LLC,* No. 8:13-CV-2811-T-30,
2014 WL 105177 (M.D. Fla. Jan. 10, 2014)............................................18

*Blair v. Landing P'ship,* 369 III. 3d 318, 323, 859 N.E.2d 1188 (2006)....................................13

*Bolger v. Youngs Drug Prod. Corp.,* 463 U.S. 60 (1983)........................................11, 12

*Buckley v. Valeo,* 424 U.S. 1, 240 (1976)............................................7

*Carroll V. Lowes Home Centers, Inc.,* No. 12-23996-CIV,
2014 WL 1928669 (S.D. Fla. May 6, 2014) ............................................19

*Cox Broad. Corp. v. Cohn,* 420 U.S. 469 (1975)............................................1, 6, 10

*Dapeer v. Neutrogena Corp.,* 95 F. Supp. 3d 1366 (S.D. Fla. 2015) ............................................21

*Davis v. Fed. Election Comm'n,* 554 U.S. 724 (2008) ............................................21

**TABLE OF AUTHORITIES**
(Continued)

**Page**

## CASES

*Denius v. Dunlap,* 330 F.3d 919 (7th Cir. 2003) ..................................................................2

*Dex Media W., Inc. v. City of Seattle,* 696 F.3d 952 (9th Cir. 2012).............................11

*Evans v. City of Chicago,* 434 F.3d 916 (7th Cir. 2006).................................................22

*Faulkner Press, L.L.C. v. Class Notes, LLC,* 756 F. Supp. 2d 1352 (N.D. Fla. 2010)................16

*First Nat'l Bank of Bos. v. Bellotti,* 435 U.S. 765 (1978)..............................................13

*Fojtasek v. NCL (Bahamas) Ltd.,* 613 F. Supp. 2d 1351 (S.D. Fla. 2009) ....................20

*Gates v. Discovery Commc'ns, Inc.,* 101 P.3d 552 (Cal. 2004)...................................9, 13

*Gertz v. Robert Welch,* 418 U.S. 323 (1974) ..................................................................10

*Greater New Orleans Broad. Ass'n Inc. v. United States,* 527 U.S. 173 (1999)...........12

*Guerrero v. Target Corp.,* 889 F. Supp. 2d 1348 (S.D. Fla. 2012) ................................20

*Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657 (1989)...........................12

*Hays Cnty Guardian v. Supple,* 969 F.2d 111 (5th Cir. 1992) ......................................11

*Hill v. Tangherlini,* 724 F.3d 965 (7th Cir. 2013)..........................................................22

*Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46 (1988)..................................................13

*In re Factor VIII or IX Concentrate Blood Prod. Litig,*
25 F. Supp. 2d 837 (N.D. Ill. 1998)...............................................................................10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
37 F.Supp. 3d 1126 (N.D. Cal. 2014) ...........................................................................11

*Jordan v. Jewel Food Stores, Inc.,* 743 F.3d 509 (7th Cir. 2014).................................12

*Keeton v. Gynecare Worldwide,* No. 15-20442-CIV, 2016 WL 2753866
(S.D. Fla. Jan. 29, 2016) ................................................................................................24

*Keeton v. Johnson & Johnson,* No. 15-20442-CIV, 2016 WL 2753667
(S.D. Fla. Mar. 31, 2016) ...............................................................................................24

**TABLE OF AUTHORITIES**
(Continued)

**Page**

**CASES**

*LaBella Winnetka, Inc. v. Vill. Of Winnetka,* 628 F.3d 937 (7th Cir. 2010) ..................................2

*Lane v. MRA Holdings, LLC,* 242 F. Supp. 2d 1205 (M.D. Fla. 2002) ...................................14, 16

*Loft v. Fuller,* 408 So. 2d 619 (Fla. Dist. Ct. App. 1981) ...............................................................17

*Lugosi v. Universal Pictures,* 603 P.2d 425 (Cal. 1979) ................................................................23

*Martin v. Hearst Corp.,* 777 F.3d 546 (2d Cir. 2015) .....................................................................10

*Michalowski v. Rutherford,* 82 F. Supp. 3d 775 (N.D. Ill. 2015) ...................................................25

*Moore v. Hoff,* 821 N.W.2d 591 (Minn. Ct. App. 2012) ..................................................................8

*Montesano v. Donrey Media Grp.,* 668 P.2d 1081 (Nev. 1983) .......................................................9

*N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886 (1982) ................................................1, 7, 8

*Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157 (2004) .................................................23

*Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249 (1994) .......................................................22

*Nieman v. VersusLaw, Inc.,* 512 Fed. Appx. 635 (7th Cir. 2013) ...........................................2, 8, 23

*Oliveira v. Amoco Oil Co.,* 201 Ill. 2d 134, 149, 776 N.E.2d 151 (2002) .....................................19

*Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721 (8th Cir. 2004) .................................................24

*Riley v. Nat'l Fed'n of the Blind of N. Carolina Inc.,* 487 U.S. 781 (1988) ....................................7

*Scheidler v. Nat'l Org. for Women, Inc.,* 537 U.S. 393 (2003) ......................................................25

*Skinner v. Nehrt,* 242 F.2d 573 (7th Cir. 1957) .............................................................................23

*Smith v. 2001 S. Dixie Highway, Inc.,* 872 So. 2d 992 (Fla. Dist. Ct. App. 2004) ...................19, 20

*Smith v. 2001 S. Dixie Highway, Inc.,* No. 4D03-2293, 2004 WL 385046 (Fla. Dist. Ct. App. March 3, 2004) ................................................................................................................................19

*Snyder v. Phelps,* 562 U.S. 443 (2011) ............................................................................................7

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

## CASES

*Steele v. Hosp. Corp. of Am,* 36 F.3d 69 (9th Cir. 1994) ................................................... 24

*Stransky v. Cummins Engine Co., Inc.,* 51 F.3d 1329 (7th Cir. 1995) ............................... 10

*Street v. New York,* 394 U.S. 576 (1969) .............................................................................. 7

*Szumny v. Am. Gen. Fin.,* 246 F.3d 1065 (7th Cir. 2001) ..................................................... 5

*Tierney v. Advocate Health & Hosps. Corp.,* 797 F.3d 449 (7th Cir. 2015) ........................ 5

*Toney v. L' Oreal, USA, Inc.,* 406 F.3d 905 (7th Cir. 2005) ............................................... 15

*Transp. Alternatives, Inc. v. City of New York,* 340 F.3d 72 (2d Cir. 2003) ...................... 11

*Tyne v. Time Warner Entm't Co., L.P.,* 901 So. 2d 802 (Fla. 2005) ............................. 16, 17

*Tyne v. Time Warner Entm't Co., L.P.,* 425 F.3d 1363 (11th Cir. 2005) ............................ 16

*Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.,*
204 F. Supp. 2d 1338 (M.D. Fla. 2002) ............................................................................... 16

*Wakefield v. Citizens Information Associates, LLC,*
13-cv-23754 (August 26, 2014 S.D.F.L.) ............................................................................. 17

*Willan v. Columbia Cty.,* 280 F.3d 1160 (7th Cir. 2002) ..................................... 6, 9, 10, 14, 23

*Wolfe v. Schaefer,* 619 F.3d 782, 785 (7th Cir. 2010) ........................................................... 6

*Woodard v. Sunbeam Television Corp.,* 616 So.2d 501 (Fla. Dist. Ct. App. 1993) ............ 10

*Valentine v .C.B.S., Inc.,* 698 F.2d 430 (11th Cir. 1983) .................................................... 17

*Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
425 U.S. 748 (1976) .............................................................................................................. 13

*Vazquez v. Cent. States Joint Bd.,* 547 F. Supp. 2d 833 (N.D. Ill. 2008) ................. 22, 24, 25

*Vrdolyak v. Avvo, Inc.,* No. 16 C 2833, 2016 WL 4765716 (N.D. Ill. Sept. 12, 2016) ..... 11

*Zglobicki v. Travel Channel, LLC,* No. 11 C 6346,
2012 WL 725570 (N.D. Ill. Feb. 2, 2012) .......................................................................... 15

## STATUTES

15 U.S.C. § 1681 ...................................................................................................25

18 U.S.C. § 1964 ...................................................................................................22

815 ILCS 505/2QQQ .............................................................................................19

815 ILCS 505/10a ..................................................................................................25

Florida Stat. § 501.211 ......................................................................................19, 25

Florida Stat. § 201.212(3) .....................................................................................20

Florida Stat. § 540.08 ................................................................................13, 16, 17

765 ILCS 1075/5 ....................................................................................................15

765 ILCS 1075/35 ..............................................................................................15, 17

765 ILCS 1075/55 ..................................................................................................25

## OTHER AUTHORITIES

5 *McCarthy on Trademarks and Unfair Competition* § 28:46 n.1 (4th ed)..................................24

*Restatement (Second) of Torts*, § 652D ...........................................................................1

## INTRODUCTION

No matter how Plaintiffs attempt to frame Defendants' alleged business practices—they have had close to two years to formulate their theories of recovery[3]—all of Plaintiffs' claims are based on the re-publication of public records, not any unlawful conduct. As a result, all of plaintiffs' claims fail as a matter of law for both statutory and Constitutional reasons.

Plaintiffs' entire case should be dismissed with prejudice because two independent, but related, Constitutional principles are binding and control disposition of this case. First, there can be no liability for re-publishing matters contained in a public record:

> There is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life which are matters of public record[.]

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494 (1975) (quoting *Restatement (Second) of Torts*). Second, where both protected speech and alleged unlawful conduct are involved, the First Amendment demands that "[o]nly those losses proximately caused by unlawful conduct [not First Amendment protected activity] may be recovered." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 918 (1982).

These two Constitutional principles require dismissal of Plaintiffs' entire case with prejudice. When stripped of hyperbole and conclusory allegations, Plaintiffs' complaint is that Defendants re-publish public arrest records and charge the public a fee to remove or edit the arrest records. But it is absolutely unequivocal that neither Plaintiffs nor any members of the purported classes have paid, or have been injured by paying such a fee. By this lawsuit, Plaintiffs seek to use the mere existence of the so-called removal service (available on a separate website) as a pretext to recover for injuries allegedly caused by, and to impose a prior restraint

---

[3] The First Amended Complaint (Doc. 60) is the ***fifth*** version of the complaint in this case and defendants have filed several motions to dismiss those complaints. *See* Doc. 32 at 4-5.

1

on, protected speech. The First Amendment does not permit that result. As the Seventh Circuit recently held in a similar case:

> All of [the plaintiff's] claims are based on the defendants' republication of documents contained in the public record, so they fall within and are barred by the First Amendment privilege. Accordingly, we need not address any of [the plaintiff's] remaining arguments.

*Nieman v. VersusLaw, Inc.*, 512 Fed. Appx. 635, 638 (7th Cir. 2013) (affirming dismissal of an invasion of privacy claim against "for-profit[,] aggregation websites" that published court documents from the plaintiff's prior lawsuit). The exact same analysis applies here and requires dismissal of Plaintiffs' entire lawsuit with prejudice.

## FACTUAL ALLEGATIONS

Mugshots.com ("mugshots.com" or the "Website") provides a database and an internal search engine for already public arrest records replete with the arrestee's booking photo. First Amended Complaint ("FAC") (Doc. 60), ¶ 74.[4] The public booking photographs and official arrest records in the mugshots.com database originate from governmental sources and are obtained either "from department of corrections websites," *id*. ¶ 113, through Freedom of Information Act requests, or purchased "from pubic record databases maintained by government agencies[.]" *Id*., ¶ 119. Once the records are obtained, they are simply posted to the Website. *Id*., ¶¶ 118, 124. "Mugshots.com republishes these Official Records in their original form ('as is')[.]" *Id*., ¶ 327 (quoting Website). Mugshots.com exercises no editorial control over the public arrest records; mughots.com "makes little or no effort to update the information and

---

[4] The FAC conclusorily alleges that "[a]lthough Defendants argue that mugshots.com is analogous to a search engine, it is not." Doc. 60, ¶ 321. Even a cursory inspection of the Website reveals that allegation to be false. Defendants request that the court take judicial notice of the mugshots.com website, located at http://mugshots.com/ (last visited, 09/14/16). The court may take judicial notice of the Website pursuant to Federal Rule of Evidence 201 without transforming Defendants' 12(b)(6) motion into a motion for summary judgment. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003). On the landing page, in the upper right hand corner is the search bar for mugshots.com's internal search engine, which allows users free access to search the public records database.

photographs being posted to mugshots.com." *Id*., ¶ 125. The arrest information constitutes true historical facts that may, as the result of the passage of time, become "out of date" and incomplete. *Id*., ¶ 131. There is no allegation, nor could there be, that any monetary fee is charged to access the mugshots.com database.

In addition to collecting public arrest records and providing an internal search engine to search the mugshots.com database, mugshots.com is a news outlet that publishes "'news stories' about arrestees[.]" *Id*., ¶ 245. Mugshots.com "publish[es] over 1,000 crime stories every month." *Id*., ¶ 250. As with most websites, including the website of any "traditional" news organization, such as the *New York Times*, the Website contains advertising., *Id*., ¶ 223, including advertising for unpublisharrest.com. *Id.*, ¶ 190.

Unpublisharrest.com is a website separate from mugshots.com that offers licensing rights to the public to control specific information in the mugshots.com database. *Id*., ¶ 165.[5] For a fee, any member of the public can obtain a license to "Permanently Publish(1), Edit(2), or Halt Publication (Unpublish)(3) of one's arrest record(s) per one paid application within [mugshots.com's] publically available database." *Id*.[6] There is absolutely no allegation in this case that Plaintiffs or any members of the purported classes have paid a licensing fee. As a result, this case does not involve any issues about whether any statute forbids, or could constitutionally prohibit, such licensing services, or the solicitation of such licensing services.

Instead, Plaintiffs' claims are disguised defamation claims that uniformly allege reputational injury damages (*i.e.*, diminished employment prospects) caused by the re-

---

[5] Plaintiffs allege that unpublisharrest.com is a "fake reputation management firm" *Id*., ¶ 184, owned and controlled by Sahar Sarid. *Id.*, ¶ 186. Although it is not clear what Plaintiffs mean by this allegation, it is clear that no Plaintiff has alleged any damages resulting from that allegation.

[6] The "licensing service" has been referred to throughout these proceedings as the "removal service" and "takedown service."

publication of the arrest records and photos. For example, the FAC alleges that Mr. Gabiola's employment was terminated "[a]s a result of [his employer] seeing [Mr. Gabiola's] mugshot.com posting." *Id.*, ¶ 347. Plaintiff Hammond likewise complains that he "is unable to obtain substantial long-term employment because of the mugshots.com web pages which appear in his web search results." *Id.*, ¶ 374. Plaintiff Thompson alleges that he "was rejected for" jobs for which he applied because of his mugshots.com profile. *Id.*, ¶¶ 404-403. Plaintiffs' statutory claims are also based on the public arrest information and photos, not the removal service, or any other aspect of the Website. Plaintiffs' right of publicity claims are based on the availability of their arrest photos on the Website, not the licensing service. *Id.*, ¶¶ 436-438, 516-518. The alleged "credit reports" that are alleged to violate the Fair Credit Reporting Act ('FCRA") are vaguely described as "the information offered on the mugshots.com website." *Id.*, ¶ 491.

Accordingly, Plaintiffs seek to recover alleged damages caused by, and to permanently enjoin (impose a prior restraint on), the re-publication of public arrest records:

- Count I seeks damages alleged to be caused by, and a permanent injunction against, the "***posting or use of the images or photographs***" of arrestees;

- Count II seeks damages caused by, and a "permanent injunction against…***further posting or use of the images or photographs***" of arrestees;

- Count III seeks damages allegedly caused by, and "a permanent injunction" against the "***posting or use of the images or photographs***" of arrestees;

- Count V[7] seeks damages caused by, and a permanent injunction against, the "***posting or use of the images or photographs***" of arrestees;

- Counts VI and VII seeks "statutory damages," for, and a "permanent injunction" against, posting "***the information offered on the mugshots.com website***";

- Count VIII seeks damages for, and a permanent injunction against, posting the public arrest photos;

---

[7] The FAC does not contain a "Count IV."

- Count IX seeks damages for, and a permanent injunction against, violations of the Fair Credit Reporting Act alleged to be the posting of public arrest records.

*See* Doc. 60 (emphasis added). The First Amendment bars all such recovery and relief.

## ARGUMENT

### I.   The Standard for Rule 12(b)(6) Motions.

"To survive dismissal, the complaint must allege sufficient facts to 'state a claim to relief that is plausible on its face.'" *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' well-pled facts are accepted as true and reasonable inferences construed in their favor. *Id.* "But allegations in the form of legal conclusions are insufficient." *Id.* (internal quotation marks omitted). "So are threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (internal quotation marks omitted). A complaint should be dismissed with prejudice where, as here, the non-movant can prove no set of facts supporting its claims for relief. *See Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001).

### II.   All of Plaintiffs' Claims Are Barred By the First Amendment.

Defendants' initial motion to dismiss (Doc. 12) and memorandum in support (Doc. 13), incorporated herein by reference, demonstrated that Plaintiffs could not recover under any of the statutes alleged to have been violated for actual and statutory injuries caused by the re-publication of public arrest records because such recovery is barred by the First Amendment. Doc. 13 at 6-8. Plaintiffs responded by acknowledging "that Defendants have a right to publish public arrest records under the First Amendment." Doc. 25 at 7. Plaintiffs clarified that they "are challenging the ***takedown*** service, not the ***publication*** of arrest records," *id.* at 14 (emphasis in original), "[t]hat the takedown service is distinguishable from the posting of the arrest records," *id.* at 11, and that "the practice of collecting fees for the removal of mugshots and

arrest records is very different from the practice of posting them in the first instance." Doc. 25 at 16. Defendants agree and add the corollary: Injury caused by the posting of public records "is very different from" injury caused by "the practice of collecting fees for the removal of mugshots and arrest records." Plaintiffs allege no injuries caused by the so-called "takedown service"; instead, all of their claims and injuries are based on the re-publication of their official arrest records. For this reason alone, the FAC must be dismissed with prejudice.

A.     **There is a Constitutional Privilege To Speak On Matters of Public Concern and to Republish Matters Contained in a Public Record.**

As Plaintiffs concede, Doc. 25 at 7, 11, 14, 16, and as the Seventh Circuit has held, Defendants have a constitutional, First Amendment privilege to publish matters contained in a public record and to speak on matters of public concern:

> The Supreme Court held in [*Cox Broad. Corp.*, 420 U.S. at 494-96] that the First Amendment creates a privilege to publish matters contained in public records even if publication would offend the sensibilities of a reasonable person. (The matter in question was the identity of a woman who had been raped and murdered.)

*Willan v. Columbia Cty.*, 280 F.3d 1160, 1163 (7th Cir. 2002). "Even the publicizing of highly personal information that is not in a record open to public inspection is privileged if there is a public interest in access to the information." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010) (citations omitted).

There is no question that arrest records are matters of public interest and concern. *See Best v. Berard*, 776 F. Supp. 2d 752, 757 (N.D. Ill. 2011) ("[C]ourts have repeatedly held that information about arrests rises to the level of public concern.") (collecting cases); *see also* Doc. 13 at 6-7 (collecting cases). The United States Supreme Court recently re-affirmed the long-standing constitutional principle that speech on matters of public concern occupies the highest wrung of First Amendment values and is therefore entitled to special protection:

> Speech on matters of public concern is at the heart of the First Amendment's protection. The First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. That is because speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.

*Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (internal quotation marks and citations omitted). Because all of Plaintiffs' claims are based on the re-publication of public arrest records on mugshots.com and not any other aspect of the Website or Defendants' alleged business practices, *see* Factual Allegations, pp. 3-4, *supra*, the FAC must be dismissed with prejudice.

### B. Plaintiffs Cannot Recover For Injuries Caused By Speech On Matters of Public Concern or the Republication of Matters Of Public Record.

The First Amendment demands that Plaintiffs can only recover for injuries caused by the alleged unlawful conduct, not protected speech, or in Plaintiffs' words, Plaintiffs can only recover for injuries caused by "the ***takedown*** service, not the ***publication*** of arrest records." Doc. 25 at 14 (emphasis in original). Any suggestion that lawful, Constitutionally-privileged, First Amendment activity (posting public records) can be punished and restrained if the speaker also engages in alleged unlawful activity (collecting fees for removal) is anathema to the First Amendment. The First Amendment requires that where both protected speech and unlawful conduct are involved, the protected speech and unlawful conduct be distinguished and "[o]nly those losses proximately caused by unlawful conduct [not First Amendment activity] may be recovered." *Claiborne Hardware Co.*, 458 U.S. at 918; *see also Buckley v. Valeo*, 424 U.S. 1, 240 (1976) *superseded by statute, on other grounds*; *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 801 (1988); *Street v. New York*, 394 U.S. 576, 594 (1969). As one court summed up the *Claiborne* principle in the context of a tortious interference claim:

> When speech protected by the First Amendment is intertwined with allegedly tortious conduct, courts must carefully and explicitly delineate the tortious conduct on which liability is based so as not to infringe on a defendant's constitutional rights. When there is no practical way to separate

the tortious conduct from the protected speech, there is no liability as a matter of law.

*Moore v. Hoff*, 821 N.W.2d 591, 593 (Minn. Ct. App. 2012) (syllabus by the court).

The constitutional principle espoused in *Claiborne* and its progeny means that Plaintiffs simply cannot recover for injuries caused by the re-publication of public arrest records. Because all of Plaintiffs' alleged injuries and causes of action are based on the re-publication of public arrest photos on mugshots.com, not any unlawful activity, not the removal service nor any other aspect of the Defendants' alleged business practices, Plaintiffs' case must be dismissed in its entirety for this reason alone. *See Nieman*, 512 Fed. Appx. at 638.

### C. The Public Arrest Photos And Official Records Constitute True, Non-Actionable, Historical Facts As A Matter Of Law.

Plaintiffs attempt to preclude application of settled First Amendment law by conclusorily alleging that the official arrest records on mugshots.com are "false." To be clear, Plaintiffs do not appear to be alleging that the arrest photos are false, nor could they. An arrest photo is simply a photograph that records the historical fact of an arrest. Plaintiffs do appear to ***factually allege*** that some of the official records in the mugshots.com database are incomplete. *See e.g.,* Doc. 60, ¶ 131. For example, Mr. Gabiola complains that he is no longer on parole, but the official records in the mugshots.com database do not reflect that and are therefore incomplete. Doc. 60., ¶ 181. Plaintiff Thompson alleges that he was arrested and later cleared of all charges, Doc. 60., ¶¶ 13-19; 389, but that the official records in the mugshots.com database were incomplete because they "contained no mention of the fact that Thompson's arrest had been in error." *Id.,* ¶ 389. But the Constitutional privilege to re-publish information contained in a public record is not lost simply because the information has become stale, or is incomplete.[8]

---

[8] No one would reasonably suggest that re-publication of OJ Simpson's arrest photos from the Nicole Brown Simpson murder case would not be protected by the First Amendment simply because the arrest photo is more than 20 years old and Simpson was ultimately acquitted of the charges.

The age (or completeness) of the public record is immaterial; the unfettered First Amendment right to re-publish public records applies regardless of the age or completeness of the public record. *See, e.g., Willan*, 280 F.3d at 1161-63 (holding that the "privilege to publish matters contained in public records" precluded liability for publishing the plaintiff's 18-year-old burglary conviction.); *Best*, 776 F. Supp. 2d at 758-59 (broadcasting plaintiff's arrest and arrest history, including her juvenile arrest record, protected by constitutional privilege); *Montesano v. Donrey Media Grp.*, 668 P.2d 1081, 1088 (Nev. 1983) (finding publication of plaintiff's 23-year-old juvenile arrest record not actionable "[b]ecause all the information disclosed was contained in public records"); *Gates v. Discovery Commc'ns, Inc.*, 101 P.3d 552, 562 (Cal. 2004) (holding that a publisher could not be held liable for reporting on plaintiff's 13-year-old criminal record).

Again, Plaintiffs do not allege that they were never arrested, or that the public arrest records re-published on mugshots.com were fabricated by the governmental authorities from which they originate or any of the defendants in this case. Plaintiffs simply alleged that (in some instances) the records do not tell the complete story. Such allegations, however, do not make the arrest records false, or their publication actionable. As the Second Circuit recently held:

> The news reports at issue in this case, however, do not imply any fact about [the arrestee] that is not true. They simply state that she was arrested and criminally charged, both of which [the arrestee] admits are true. Reasonable readers understand that some people who are arrested are guilty and that others are not. Reasonable readers also know that in some cases individuals who are arrested will eventually have charges against them dropped. ***Reporting [the plaintiff's] arrest without an update may not be as complete a story as [the plaintiff] would like, but it implies nothing false about her.***

*Martin v. Hearst Corp.*, 777 F.3d 546, 553 (2d Cir. 2015) (emphasis added), *cert. denied*, 136 S. Ct. 40 (2015); *accord Willan*, 280 F.3d at 1162 (stating that case law that is "paternalistic in doubting the ability of people to give proper rather than excessive weight to a person's criminal history, is dead") (collecting cases). The official arrest records constitute true historical facts that are not rendered false simply by the passage of time. "[T]hat circumstances subsequently change

9

cannot render an historical statement false or misleading." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1332 n.3 (7th Cir. 1995), *as amended* (Apr. 7, 1995).

There is nothing unlawful about re-publishing a public arrest record that may be incomplete or not updated. A re-publisher is under no obligation to either verify the accuracy of or update the information contained in a public record. *See e.g.*, *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. Dist. Ct. App. 1993) ("[Publisher] had no duty to determine the accuracy of the information contained in the [Florida Department of Law Enforcement] records before broadcasting it in his report."). Such records constitute truthful matters of public concern and Defendants cannot be sanctioned for publishing them. *Cox Broad. Corp.*, 420 U.S. at 496.

### D. The Arrest Photos and Official Records Are Not Commercial Speech.

In their reply in support of their motion to amend, Plaintiffs argued that the Constitutional privilege to speak on matters of public concern no longer existed,[9] and at any rate did not apply in this case because the arrest photos are commercial speech. Doc. 49 at 1-4 ("Each mugshot does no more than propose a commercial transaction – use the takedown service[.]") Plaintiffs are wrong. The arrest photos are no more commercial speech than are articles in a newspaper that contains advertising. That is because non-commercial content does not transform into commercial speech just because the publication contains advertising.

When evaluating content for commercial speech, it is important to distinguish between the non-commercial (here the arrest photos) and the commercial content (the advertising). That is because "[t]he fact that a publication carries advertisements or that it is for profit does not

---

[9] To make that blatantly false argument, Plaintiffs misquoted *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 25 F. Supp. 2d 837, 847 (N.D. Ill. 1998). In Doc. 49, Plaintiffs stated: "But the 'Supreme Court emphatically rejected the doctrine of public concern' in *Gertz v. Robert Welch*, 418 U.S. 323 (1974)." The actual quote from *In re Factor VIII* is: "But soon thereafter the Supreme Court emphatically rejected the doctrine of public concern **set forth by the Rosenbloom plurality**." *Id.* at 847 (emphasis added). Plaintiffs' misquote changed the entire meaning of the quote and in the process misrepresented the law. Obviously, the Supreme Court has never rejected the doctrine of public concern. In fact, the Supreme Court recently reaffirmed the doctrine in *Snyder v. Phelps*, 562 U.S. 443 (2011).

render its speech commercial for first amendment purposes." *Ad World, Inc. v. Doylestown Twp.*, 672 F.2d 1136, 1139-40 (3d Cir. 1982) (holding that a 16-page tabloid that included mostly advertising along with a few pages of community news was not rendered commercial speech by the advertising); *see also Vrdolyak v. Avvo, Inc.*, No. 16 C 2833, 2016 WL 4765716, at *4 (N.D. Ill. Sept. 12, 2016) (dismissing Illinois Right of Publicity claim and holding that advertising and links to commercial content did not transform otherwise non-commercial attorney profiles into commercial speech); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 963-65 (9th Cir. 2012) (yellow pages telephone directories were not commercial speech despite inclusion of advertising alongside noncommercial content); *Transp. Alternatives, Inc. v. City of New York*, 340 F.3d 72, 78-79 (2d Cir. 2003) (presence of advertising on promotional literature for political demonstration did not turn event into commercial speech); *Hays Cnty Guardian v. Supple*, 969 F.2d 111, 120 (5th Cir. 1992) (inclusion of advertisements in newspaper did not render newspaper commercial speech); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126, 1144 (N.D. Cal. 2014) (inclusion of commercials during broadcast of a Division I football or basketball games does not "render the entire broadcast commercial").[10]

The arrest photos are not commercial speech. The United States Supreme Court established a test for determining commercial speech in *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983); *see also Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517-18 (7th Cir. 2014) (applying *Bolger* analysis). In *Bolger*, the Supreme Court listed three factors to determine whether speech is commercial: (1) whether the speech in question is concededly an advertisement; (2) whether it makes reference to a specific product; and (3) whether it is motivated by economic interest. *Bolger*, 463 U.S. at 66-67. In applying this test, the Court

---

[10] The advertisements that appear on mugshots.com, including the alleged advertisements for the so-called removal service, appear in the margins and in banner ads. *See* www.mugshots.com. This is typical of any news or public affairs blog. Compare, for example, http://www.salon.com/ (last visited 09/22/16).

advised that a finding of just one of the factors does not make speech commercial, but "the combination of *all* these characteristics . . . provides strong support for the . . . conclusion that the [speech in question can be] properly characterized as commercial speech." *Id.* at 67.

Under *Bolger*, the arrest photos cannot possibly be construed as commercial speech; they are not "concededly an advertisement;" and they do not refer to a specific product.[11]

Plaintiffs conclusorily allege that the public arrest records are posted for profit. Doc. 60., ¶ 146. But "speech for profit . . . does not satisfy the definition of commercial speech[.]" *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 470 (1989). A publisher's "economic motivation . . . would clearly be insufficient by itself to turn the materials [in question] into commercial speech." *Bolger*, 463 U.S. at 67; *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels."). A publisher's profit motive has never been the determining factor because even if the publisher interest "is entirely pecuniary, the interests of, and benefit to, the audience may be broader." *See Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 185 (1999). "Freedom of speech presupposes a willing speaker. But where a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). "Some of our most valued forms of fully protected speech are uttered for a profit." *Fox*, 492 U.S. at 481. That is because "[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual." *First*

---

[11] Plaintiffs' contention that the arrest photos do no more than propose a commercial transaction is absurd. An arrest photo simply communicates the historical fact of an arrest. Under Plaintiffs' seriously flawed theory, the arrest photos in the "Mugs In the News" section of the Chicago Tribune are no more than commercial proposals to buy the products and services advertised on those pages. *See* http://www.chicagotribune.com/news/chi-mugs-in-the-news-photogallery.html (last visited 09/25/16), of which the Court may take judicial notice. *See* p. 2, fn.4, *supra*. **Plaintiffs' theory would subject every newspaper in the country to liability for posting arrest photos.**

*Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 777 (1978). Simply put, "[i]f commercial speech is to be distinguished, it must be distinguished by its content," *Bates v. State Bar of Ariz.*, 433 U.S. 350, 363 (1977) (internal quotation marks omitted), not because the speaker has an alleged profit, or any other, motive. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988) ("But in the world of debate about public affairs, many things done with motives that are less than admirable are protected by the First Amendment.").

The public arrest records do not constitute commercial speech, regardless of any alleged motive for posting them. The Constitutional privilege to speak on matters of public concern and to re-publish arrest records requires dismissal of all of Plaintiffs' claims with prejudice.

Alternatively, Plaintiffs claims also fail for additional, independent statutory reasons.

### III.    Plaintiffs' Illinois and Florida Right of Publicity Claims Should Be Dismissed.

#### A.    A Citizen Does Not Need Permission or Authorization to Speak On Matters of Public Concern or to Re-publish Matters Contained in a Public Record.

Plaintiffs' Illinois and Florida right of publicity claims fail as a matter of law because citizens do not need permission or authorization from anyone to speak on matters of public concern or to republish matters contained in a public record. A claim under the Illinois Right of Publicity Act ("IRPA") requires: (1) an appropriation of one's name or likeness during one's lifetime; (2) *without written consent*; (3) for a commercial purpose. *See Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 323, 859 N.E.2d 1188, 1192 (2006). Similarly, "[s]ection 540.08 of the Florida Statutes provides that in order to be liable for commercial misappropriation, there must be an *unauthorized* publication." *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1215 (M.D. Fla. 2002) (emphasis added). Plaintiffs can prove no set of facts demonstrating a non-consensual or unauthorized use of the arrest photos because a citizen does not need permission or authorization from anyone to speak on matters of public concern or to republish matters contained in a public record.

13

As demonstrated earlier, there is a constitutional privilege to speak on matters of public concern and to give further publicity to that which is already public. *See* Section II, *supra*. The First Amendment privilege "to publish matters contained in public records" applies without regard to the plaintiff's theory of relief. S*ee Willan*, 280 F.3d at 1163. Citizens do not need permission or authorization to exercise a Constitutional privilege. If the Constitutional privilege exists, holders of the privilege have the right to exercise it, subject only to appropriate governmental time, place and manner regulations.

The United States Supreme Court's recent jurisprudence confirms as much. For instance, in *Snyder v. Phelps*, 562 U.S. 443 (2011), the Court held that the First Amendment protected a demonstration by protestors at the funeral of a marine killed in combat, during which the protestors waved placards bearing offensive comments and personal slurs. *Id.* at 459-60. At no point in its analysis did the Court even suggest, much less hold, that it was relevant whether the Westboro Baptists had permission to use Matthew Shepherd's funeral as a platform for political protest. All that mattered was whether the speech fell within the First Amendment and whether it was being undertaken at a location where the protesters "had the right to be." *Id.* at 457. Because a citizen simply does not need an arrestee's permission to republish public arrest photos, Plaintiff's right of publicity claims fail and should be dismissed for this reason alone.

**B.    The Re-Publication of Arrest Photos Is Exempt from IRPA Liability.**

The IRPA expressly exempts from its ambit the use of an image for what the statute expressly defines as "non-commercial purposes, including any news, public affairs or sports broadcast or account, or any political campaign." 765 Ill. Comp. Stat. 1075/35(b)(2). Courts construe the exemption broadly to avoid First Amendment infirmity. *See*, *e.g.*, *Best*, 776 F. Supp. 2d at 758-59. *Best* is instructive, and its application here, dispositive.

In *Best*, the Court held that a for-profit television entertainment program that broadcasted Plaintiffs' arrest, displayed her arrest history, and that was making a "commercial use" of the

14

arrest information, was nonetheless exempt from liability under the statute's "public affairs" exemption. In a previous decision in that case, the Court ruled that the use of the plaintiff's arrest information satisfied the statute's threshold definition for "commercial purpose." *Id.* at 756. Yet, even though the use met the threshold definition, the Court held that the use was still exempt from liability under the statute's "public affairs" exemption because the plaintiff's arrest, and her arrest history, were matters of public concern. *Id.* at 756-59.

The teaching of *Best* is straightforward: even if IRPA's threshold definition of "commercial purpose" is met, the use is nonetheless exempt from liability under the statute if the information pertains to matters of public concern. Any other reading of the statute would create a constitutional infirmity. *Id.* at 759. The same analysis applies here and requires dismissal with prejudice. *See Zglobicki v. Travel Channel, LLC*, No. 11 C 6346, 2012 WL 725570, at *2 (N.D. Ill. Feb. 2, 2012) (dismissing IRPA claim with prejudice where allegedly misappropriated image concerned "a subject of general interest and of value and concern to the public").

### C. The IRPA Claim Also Fails Because the Arrest Photos Are Not Used to Endorse Any Product Or Service.

IRPA codified the common law right of publicity; it is designed to protect the commercial value of a person's identity. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). "***The basis of a right of publicity claim concerns the message — whether the plaintiff endorses, or appears to endorse the product in question***." *Id.* (emphasis added). Plaintiffs' IRPA claim fails because there is no "appearance" of endorsement; no reasonable viewer would assume that the persons in the booking photos are endorsing mugshots.com's services. Plaintiffs do not allege otherwise; instead, they merely allege that the arrest photos are displayed "in connection with" the removal service. Doc. 60., ¶ 438. Thus, the IRPA claim fails for this additional reason as well.

### D. The Florida Right of Publicity Act ("FRPA") Claim Also Fails Because Re-Publication of the Arrest Photos is Exempt From Liability.

Like its Illinois' counterpart, the FRPA "is not violated when a person's identity is used 'in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses.'" *Faulkner Press, L.L.C. v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1360 (N.D. Fla. 2010) (quoting *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 806 (Fla. 2005)). The Florida courts have construed the "public affairs" exemption broadly to avoid First Amendment infirmity, holding that where, as here, the publication is protected by the First Amendment, it is exempt from liability. *See Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338, 1342 (M.D. Fla. 2002) ("It is thus clear that the [challenged publication] is entitled to First Amendment protection, and would therefore, be excepted from liability under § 540.08."), *aff'd sub nom. Tyne v. Time Warner Entm't Co., L.P.*, 425 F.3d 1363 (11th Cir. 2005). Thus, for the very same reasons the use of the arrest photos is exempt from liability under IRPA, they are exempt from liability under FRPA.

### E. The FRPA Claim Also Fails Because The Arrest Photos Are Not Being Used to Directly Promote a Product or Service As A Matter of Law.

"Under Fla. Stat. § 540.08, the terms 'trade', 'commercial', or 'advertising purpose' mean using a person's name or likeness to ***directly promote*** a product or service." *Lane*, 242 F. Supp. 2d at 1212 (emphasis added); *accord Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) ("Courts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use 'directly promote' a product or service."). "The purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else." *Tyne*, 901 So. 2d at 808.

The Florida courts have limited application of Section 540.08 only to instances of direct promotion because any other construction "would result in a substantial confrontation between

16

this statute and the first amendment to the United States Constitution guaranteeing freedom of the press and of speech." *Loft v. Fuller*, 408 So. 2d 619, 623 (Fla. Dist. Ct. App. 1981); *Tyne*, 901 So. 2d at 810 (approving "*Loft*'s construction of section 540.08"); *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 432 (11th Cir. 1983) (holding that "the publication of facts regarding matters of legitimate public or general interest" does not violate section 540.08).

Based on the foregoing, the FRPA claim fails as a matter of law for the same reasons discussed in *Wakefield v. Citizens Information Associates, LLC*, 13-cv-23754 (August 26, 2014 S.D.F.L) (unpublished order). *See* Doc. 13 at 15-16 and Exhibit 1 thereto. The District Court's application of the above principles in *Wakefield* is highly persuasive and takes into account the constitutional mandate that only uses that directly promote a product or service are actionable:

> Plaintiff argues that Citizens' portrayal of his mugshot on their websites falls within the ambit of the statute because Citizens is using his "image and likeness to promote their services[.]" But the misappropriation statute is aimed at "prevent[ing] the use of a person's name or likeness to directly promote a product *because of the way that the use associates the person's name or personality with something else.*" *Tyne*, 901 So.2d at 808 (citing *Loft*, 408 So.2d at 622) (emphasis added). Though Plaintiff asserts that his likeness is being used to "promote" Citizens' service, he has alleged no facts indicating that Citizens has created the false impression that Plaintiff is promoting or endorsing Citizens' websites or some other products. What Defendant provides is public access to the booking photos of Wakefield and others; the mugshots are not being used in a promotional capacity, they are the websites' *raison d'être*. Put another way: Plaintiff's mugshot is not being wrongly associated with any product. Plaintiff's mugshot is the product.

*Wakefield*, 13-cv-23754 at 6-8 (emphasis in original).

The *Wakefield* opinion is being offered here as persuasive authority. That case properly applies Florida authority and considers whether the arrest photos are being used to "directly endorse" a product or service. Plaintiffs will most likely offer the District Court's opinion in *Bilotta v. Citizens Info. Associates, LLC*, No. 8:13-CV-2811-T-30, 2014 WL 105177 (M.D. Fla. Jan. 10, 2014), which is also nothing more than persuasive authority. The problem with the

17

analysis in *Bilotta*, however, is that the Court never cites or discusses Florida caselaw construing the statute to avoid constitutional infirmity and holding that only uses that directly promote a product or service are actionable. That failing infects the analysis in *Bilotta*:

> Bilotta alleges that D'Antonio published Bilotta's name and image for a commercial purpose without her consent to advertise and promote "unpublishing services" that would remove an individual's mug shot from a particular site in exchange for payment. Further it alleges that D'Antonio advertises and promotes distinct goods and services on its websites. Taken as true, these allegations are sufficient to state a cause of action for violation of Fla. Stat. § 540.08.

2014 WL 105177, at *1.[12] Neither *Bilotta* nor *Wakefield* are binding on this Court. Clearly, however, *Wakefield* provides the more persuasive analysis because in that case the Court actually considered the constitutionally mandated standard for finding a "commercial use," and found no direct promotion as a matter of law and dismissed the case with prejudice.

## IV. Plaintiffs' Consumer Fraud Act Claims Under Illinois and Florida Law Fail.

### A. Plaintiffs' Claims under the Illinois Consumer Fraud Act ("ICFA") Fail.

To recover under the ICFA (including the Mugshots Act provisions), a plaintiff must allege: "(1) a deceptive act or practice by the defendant[;] (2) the defendant's intent that the plaintiff rely on the deception"; (3) that the deception occurred in the course of conduct involving trade and commerce; and "(4) actual damages to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151 (2002). Plaintiffs cannot demonstrate actual damages proximately caused by an unlawful act.

To satisfy the "actual damages" requirement, the FAC alleges the Website causes actual harm to Plaintiffs' employment prospects. But that harm could only arise as a result of the dissemination of the public arrest records, which is protected First Amendment activity and

---

[12] Plaintiffs have not even properly pled their FRPA claim under *Bilotta's* flawed analysis. Plaintiffs do not allege that the arrest photos are being used to promote anything, only that they are displayed "in connection with the 'service' of public record access." Doc. 60., ¶ 518.

therefore cannot be an unlawful act under the ICFA. Plaintiffs have not and cannot demonstrate any injury proximately caused by any purported unfair or deceptive act.

Moreover, as to Count III, under the "Mugshot Act" provisions, Plaintiffs again do not allege any injury caused by any unlawful acts prohibited by that section. The Mugshot Act provisions only make it unlawful to "accept the payment of a fee or other consideration to remove, correct, or modify said criminal record information." 815 ILCS 505/2QQQ. Plaintiffs do not allege injuries resulting from that provision as neither of the Illinois Plaintiffs allege that he paid any money to have his arrest records removed or modified.

**B.** **The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Cause of Action Fails as a Matter of Law.[13]**

Plaintiff Thompson cannot recover actual damages under the Act as a matter of law. The FDUTPA allows only "a person 'who has suffered a loss' as a consequence of a violation of the statute to recover 'actual damages.'" *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. Dist. Ct. App. 2004) (quoting FLA. STAT. § 501.211(2));[14] *see also Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204-05 (Fla. Dist. Ct. App. 2012). "Actual damages are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Baptist Hosp., Inc.*, 84 So. 3d at 1200, 1204 (internal quotation marks omitted).

Because Thompson does not, and cannot, allege that he suffered a loss for diminished value of the goods received because he did not purchase any goods or services from Defendants, he has no standing to sue under the statute. At best, Thompson can claim that the re-publication

---

[13] In the FAC, Plaintiffs label Fla. Stat. § 501.204 as the Florida Consumer Protection Act.

[14] In their Reply in Support of Motion to Amend (Doc. 49), Plaintiffs represented that *Smith* had been superseded and was no longer good law. *Id.* at 13 (citing *Carroll v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *1 (S.D. Fla. May 6, 2014)). That is false. As *Carroll* explained, it was an earlier opinion in that case that was superseded by the very opinion Plaintiffs represented was superseded. *Carroll,* 2014 WL 1928669, at *3 n.3. The opinion that was actually withdrawn and superseded is *Smith v. 2001 S. Dixie Highway, Inc.*, No. 4D03-2293, 2004 WL 385046 (Fla. Dist. Ct. App. Mar. 3, 2004), *opinion withdrawn and superseded on reh'g*, 872 So. 2d 992 (Fla. Dist. Ct. App. 2004).

of his arrest photo and information caused him personal reputational injuries in the form of diminished employment prospects. But such personal injuries are not cognizable under the Act. *See* FLA. STAT. § 501.212(3) (The FDUTPA "does not apply to . . . [a] claim for personal injury[.]"); *See Smith*, 872 So. 2d at 994 (The "FDUTPA allows recovery for diminished value of goods received but does not authorize recovery of special or consequential damages" and the "loss of [the plaintiff's] employment is an indirect and 'consequential' result of the . . . alleged violation of the statute[.]"); *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1356 (S.D. Fla. 2009); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, at *46 (M.D. Fla. 1998) (dismissing FDUTPA claim because a plaintiff cannot recover for personal injuries pursuant to that statute) *aff'd sub nom. Barrow v. Bristol Meyers Squibb*, 190 F.3d 541 (11th Cir. 1999).

Moreover, the claim also fails because Mr. Thompson's injuries are caused by conduct specifically permitted the Act, the re-publication of public records. "It is well-established that FDUTPA does not apply to any acts or practices that are required or specifically permitted by federal or state law." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1358 (S.D. Fla. 2012).

Plaintiff Thompson also does not have Article III standing to assert claims for injunctive relief under the FDUTPA. Putting aside that Plaintiff Thompson is not an "aggrieved" party under the FDUTPA and therefore does not have statutory standing to bring a claim for injunctive relief, Doc. 45 at 8-9, Mr. Thompson does not have Article III standing to assert a claim for injunctive relief in federal court. A plaintiff must have Article III standing "for each claim he seeks to press and for each form of relief that is sought" in federal court. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

Mr. Thompson has not alleged any facts demonstrating the requisite threat of future harm. To the contrary, Mr. Thompson alleges that his arrest photo and arrest record are no longer available on mugshots.com. Doc. 60., ¶ 405.

> Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, it cannot supplant Constitutional standing requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm. The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs.

*Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373-74 (S.D. Fla. 2015) (internal quotation marks and citations omitted) (dismissing claim for injunctive relief under the FDUTPA where the defendant removed the alleged harm-causing labels from its sunscreen products). Here, because Mr. Thompson's arrest records are no longer available on the Website, "it would be impossible for Plaintiff to allege any threat of future harm," *id.* at 1374, and therefore he lacks standing to pursue his claims for injunctive relief in federal court.

## V.     The Federal Racketeering Claims Fail As A Matter of Law.

There is a litany of defects in Plaintiffs' RICO causes of action. As demonstrated in Defendants' Response to Plaintiffs' Motion to Amend, Defendants have not committed extortion under Florida and Illinois law because those statutes require a threat intended to force the victim to pay money ***to prevent the threat from being carried out***. *See* Doc. 45 at 12-15, which is incorporated herein by reference. There are no allegations that Defendants threaten to post public records; they are only alleged to post the public records and then inform the public that there is a fee for removal. As such, Plaintiffs' extortion theory is fatally flawed because the threat to expose the public arrest records is wholly lacking. The information is already posted; it is already exposed. There is simply no threat to publish it before it is published. But even if the posting of public records did constitute a threat, such conduct is fully protected speech, and therefore the RICO claim should be dismissed on that basis alone. "Conduct alleged to amount to . . . extortion . . . may turn out to be fully protected First Amendment activity, ***entitling the***

21

*defendant to dismissal on that basis*." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J., concurring) (emphasis added).

As explained further below, the RICO causes of action fail for additional and independent reasons: 1) Plaintiffs have not alleged a cognizable RICO injury, and therefore do not have standing to assert their claims because arrestees do not have property rights in their arrest photos, and even if they did, such rights are intangible property rights that do not satisfy RICO's "concrete financial loss" requirement; 2) Plaintiffs, at best, have alleged attempted extortion, which does not satisfy RICO's standing requirements; and 3) Even if Defendants did obtain Plaintiffs' rights of publicity, the allegations are that they did so *without* Plaintiffs' consent, not *with* their consent, a required element of a RICO extortion claim.

### A. Plaintiffs Have Not Suffered a Cognizable RICO Injury.

The federal RICO statute provides a civil remedy only to a "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). To have standing to assert a RICO claim, "a plaintiff must allege a 'concrete financial loss,' which does not encompass a 'mere injury to a valuable intangible property interest.' Put another way, 'injuries proffered by plaintiffs in order to confer RICO standing must be "concrete and actual," as opposed to speculative and amorphous.'" *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 860 (N.D. Ill. 2008) (*quoting Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006) *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)); *see also Anderson v. Lincoln Ins. Agency Inc.*, 2003 WL 291928, at *3 (N.D. Ill. Feb. 10, 2003).

The FAC does not specify what RICO injury is alleged to have been proximately caused by the alleged racketeering activity. The only injury alleged by the Plaintiffs in this case, however, are personal, reputational injuries in the form of diminished employment prospects caused by the re-publication of public arrest records. *See* Doc. 60, ¶¶ 365, 366, 374, 382, 383, 384, 403. As Defendants demonstrated in their Response to the Motion to Amend, personal

reputational injuries are not cognizable under RICO. Doc. 45 at 10-11. Plaintiffs responded by identifying their alleged RICO damages as intangible rights to publicity arrestees allegedly have in their arrest photos. Doc. 49 at 8-9. Plaintiffs' latest iteration of their alleged RICO damages, however, also fails as a matter of law.

An arrestee does not have a property right to information contained in a public arrest record. By definition, public records belong to the public. *See e.g.*, *Nieman*, 512 Fed. Appx. at 637-38 (Court documents are "not the litigants' property."). As the United States Supreme Court has held, once public records are disclosed to the public, the information contained therein is the property of the public. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("[O]nce there is disclosure [of a public record under the Federal Freedom of Information Act], ***the information belongs to the general public***.") (emphasis added). This is particularly true regarding records obtained by law enforcement, such as arrest and conviction records. *See*, *e.g.*, *Willan*, 280 F.3d at 1162 (explaining that arrest and conviction records "are public rather than private documents [and therefore] the information in them is not the property of the convicted persons"); *Cf. Skinner v. Nehrt*, 242 F.2d 573, 575 (7th Cir. 1957) (holding that the mere assertion by plaintiff that he had a property right in his criminal trial transcripts "was frivolous").

Simply put, Plaintiffs do not have property rights in their arrest photos. But even if they did, such rights are intangible property rights not cognizable under RICO. "The right of publicity protects the intangible proprietary interest in the commercial value in one's identity." *Lugosi v. Universal Pictures*, 603 P.2d 425, 445 (Cal. 1979); *accord Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1541 (11th Cir. 1983) (the "the right of publicity" is "an intangible personal property right"); *see also* 5 *McCarthy on Trademarks and Unfair Competition* § 28:46 n.1 (4th ed.) (right of publicity is intangible personal property). As a result, Plaintiffs' RICO claims fail as a matter of law because RICO's "concrete financial loss [requirement] does not encompass a mere injury to a valuable intangible property interest." *Vazquez,* 547 F. Supp. 2d at

23

860; *see also Keeton v. Gynecare Worldwide*, No. 15-20442-CIV, 2016 WL 2753866, at *3 (S.D. Fla. Jan. 29, 2016) ("Allegations of an injury to . . . an intangible property interest are insufficient to state a RICO injury."), *report and recommendation adopted sub nom. Keeton v. Johnson & Johnson*, No. 15-20442-CIV, 2016 WL 2753667 (S.D. Fla. Mar. 31, 2016); *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (holding that for RICO standing the plaintiffs must prove a "concrete financial loss," an actual loss "of their own money," and "not mere 'injury to a valuable intangible property interest'"); *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 728-29 (8th Cir. 2004) (similar).

Plaintiffs' RICO cause of action should therefore be dismissed because the allegations of the FAC establish that Plaintiffs have not suffered a cognizable RICO injury.

## B. Attempted Extortion Does Not Confer RICO Standing Because It Does Not Satisfy RICO's Concrete Financial Loss Requirement.

Stripped of its hyperbole and conclusory language, Plaintiffs' alleged "extortion" scheme is that Defendants post arrest photos and then only remove the arrest information for a fee. Plaintiffs do not allege that any of them actually paid a removal fee. At best, all that is alleged is that Defendants' attempted to obtain payment for removal. But an attempt cannot satisfy RICO's standing requirement for a civil claim. *See Vazquez*, 547 F. Supp. 2d at 862, 862 n.15 (There can be no "RICO injury" "where the plaintiffs' injury was caused by their **refusal** to consent to defendants' attempts at extortion.") (emphasis in original). "While such threats may be actionable under criminal or other law[,] they are not acts that can confer RICO standing." *Id.* at 862 n.15. Plaintiffs RICO claims should be dismissed for this additional reason.

## C. The RICO Extortion Claim Fails Because Defendants Did Not Obtain Property From Plaintiffs *With* Their Consent.

The alleged RICO extortion scheme is based on Illinois and Florida "extortion" statutes. Doc. 60., ¶¶ 467- 469. State law extortion statutes "can serve as a predicate act if the conduct is 'extortionate' in the generic sense as defined in *Scheidler*, *i.e.*, it involves 'obtaining something

of value from another *with his consent* induced by the wrongful use of force, fear, or threats.'"
*Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 789 (N.D. Ill. 2015) (emphasis added) (*quoting Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003)); *see also Ace Pro Sound & Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007).

The FAC does not allege that Defendants obtained Plaintiffs' rights of publicity from any of the plaintiffs "with his consent." To the contrary, Plaintiffs alleged that their alleged rights to publicity in their booking photos were effectively stolen and used *without their* consent. Doc. 60, ¶ 434. Plaintiffs' RICO claims fail this additional reason.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety. Defendants also request their reasonable attorneys' fees and costs defending Plaintiffs' claims pursuant to 765 ILCS 1075/55, 815 ILCS 505/10a, Fla. Stat. § 501.211, and 15 U.S.C. § 1681.

**Dated**: September 27th, 2016 .

Respectfully submitted,

/s/ *David N. Ferrucci*
David N. Ferrucci (AZ SBN 027423)
*(admitted pro hac vice)*
Dickinson Wright PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004
One of the Attorneys for Defendants

Michael A. Stick
Andrew Foreman
Butler Rubin Saltarelli & Boyd LLP
321 North Clark Street, Suite 400
Chicago, Illinois 60654
Telephone: 312-444-9660
Facsimile: 312-444-9286

And

Adam D. Grant
Dickinson Wright PLLCC
500 Woodward Ave., Suite 4000
Detroit, Michigan 48226