## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

———————————————————————

PETER GABIOLA, ANTONIO HAMMOND,
and JIMMY THOMPSON on behalf of themselves
and all other similarly situated individuals,

                       Plaintiffs,

            v.

THOMAS KEESEE, MUGSHOTS.COM, LLC,
*et. al.*,

                       Defendants.

———————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.: 16-C-2076

Judge Coleman

### INTERVENOR UNITED STATES'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Pursuant to the Court's order dated September 26, 2016, and Rules 7 and 12 of the Federal Rules of Civil Procedure, defendant-intervenor United States respectfully submits this response in opposition to the motion to dismiss filed by defendants, Thomas Keesee, Mugshots.com LLC, et al. (collectively, Mugshots). *See generally* Defs. Mot. D. Am. Compl., Sept. 27, 2016, ECF No. 67; Defs. Mot. D. Br., Sept. 27, 2016, ECF No. 68 (Def. Br.).

For the reasons articulated below, we respectfully request that the Court deny Mugshots's motion at least with respect to Counts VI[1] and VII of plaintiffs' amended complaint. *See* Pl. Am. Compl. ¶¶ 477–507, Aug. 24, 2016, ECF No. 60 (Pl. Am. Compl.). Given our limited purpose for intervening in this matter, we take no position on the remainder of Mugshots's motion—nor do we take a position on the actual merits of plaintiffs' claims.

---

[1] Plaintiffs' amended complaint contains two claims labeled "Count VI." *See* Pl. Am. Compl. ¶¶ 477–503. We respectfully request that the Court deny Mugshots's motion with respect to both claims labeled "Count VI."

## INTRODUCTION

We intervened in this case because Mugshots indicated that it was challenging the constitutionality of a Federal statute. Specifically, in its March 2016 filing, Mugshots certified that it was making an as-applied First Amendment challenge to the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA). In its motion to dismiss the plaintiffs' amended complaint, Mugshots does, indeed, argue that the First Amendment categorically precludes the application of any state or Federal statute to penalize its conduct. Notably, however, in a recent filing Mugshots has now clarified that it is "*not* challenging the constitutionality of any statute"—rather, Mugshots explains, it is merely asserting the First Amendment as an absolute defense. *See* Def. Resp. to Pl. Mot. for Rule 5.1 Notice at 2, Nov. 4, 2016, ECF No. 75 (emphasis added).[2] This concession is not wrong, but it does not go far enough. Properly construed, Mugshots's arguments neither impugn the constitutionality *nor preclude the application* of any Federal law.

In their amended complaint, plaintiffs seek relief under two Federal statutes—the FCRA, and the Federal Racketeer Influenced and Corrupt Organizations Act (RICO). Although Mugshots broadly alleges that the First Amendment protects its conduct, and defeats *all* of plaintiffs' statutory claims, we do not understand Mugshots to be questioning the constitutionality of applying RICO itself. That is because plaintiffs' RICO claims are all based on state law predicates; that is, plaintiffs are claiming that Mugshots violated RICO only to the extent that Mugshots violated *state* law. *See generally* Pls. Am. Compl. ¶¶ 462–76. As a result, to the extent that Mugshots is claiming that its conduct cannot be constitutionally penalized, its issue is really with the underlying state statutes, not with RICO. This fact—combined with

---

[2] As Mugshots explains, this position is a change from the one it originally asserted in this litigation. *See* Def. Resp. To Pl. Mot. for Rule 5.1 Notice at 4 n.1, Nov. 4, 2016, ECF No. 75. We agree.

Mugshots' explicit disavowal of a constitutional challenge—suggests that there is no further need for us to discuss RICO in this response.[3]

Plaintiffs' FCRA claims are a somewhat different story. Mugshots's First Amendment arguments seeks to foreclose the application of the substantive FCRA provisions—provisions that plaintiffs claim entitle them to relief. As we explain below, however, Mugshots's arguments are unavailing. The provisions of the FCRA on which plaintiffs rely do not, on their face, prohibit the kind of expression that Mugshots claims the First Amendment protects. Accordingly, Mugshots's First Amendment arguments are simply inapposite.

## <u>BACKGROUND</u>

For purposes of this response we accept the facts as they are alleged in the plaintiff's amended complaint.

Plaintiffs, Peter Gabiola and Antonio Hammond, claim that Mugshots makes money by subjecting people to public shaming and extortion. *See generally* Pl. Am. Compl. at 2. Specifically, plaintiffs explain, Mugshots operates an eponymous website on which it reprints arrest and booking photographs of people who are detained by local sheriffs' offices (that information and photographs are initially made public by the police offices themselves). *See, e.g.*, *id.* ¶¶ 112–120. For a fee ranging anywhere from a few hundred to several thousand dollars, a company affiliated with Mugshots, and run by some of the same defendans, offers to remove the information from Mugshots's website.[4] *See, e.g.*, *id.* ¶¶ 142–156; 184–212; 353–54. Plaintiffs insist that, in carrying out this scheme, Mugshots engages in conduct that violates the FCRA, as well as several state statutes. *Id.* ¶¶ 430–527.

---

[3]  Mugshots, of course, presents other—non-constitutional—reasons to dismiss plaintiffs' RICO claims. *See generally* Def. Br. at 13–25. We take no position on those arguments.

[4]  Plaintiffs also allege a number of other fraudulent and deceitful business practices, but those allegations are not relevant to the constitutional issue here.

First passed in 1970, the FCRA regulates the activities of consumer reporting agencies and restricts uses of commercial consumer credit reports (that is, reports about consumers' solvency, their credit rating and capacity, and other personal information that is used or expected to be used for specified, and generally commercial, purposes). Among other things, the FCRA requires consumer reporting agencies to: (1) adopt reasonable procedures to ensure the accuracy of information they disseminate; (2) limit disclosure to only certain users with certain permissible purposes; and (3) investigate credit report information that a consumer disputes. Additionally, the FCRA generally prohibits credit reporting agencies from reporting certain types of information such as records of arrests that did not result in convictions and "other adverse item[s] of information" that antedate the report by more than seven years. Congress found that these and other restrictions were necessary to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a).

As relevant here, plaintiffs claim that the information Mugshots publishes—arrest records, booking photographs, and personal information—falls under the FCRA's definition of a "consumer report." *See, e.g.*, Pl. Am. Compl. ¶487. And, plaintiffs claim, Mugshots, for fees, regularly assembles or evaluates information on consumers for the purpose of furnishing these reports to third parties (and does so using any means of interstate commerce)—and thus is a "consumer reporting agency" under the FCRA. *See id.* ¶¶ ¶ 481–82. Mugshots, plaintiffs insist, is therefore subject to the FCRA's requirements, and liable for any violations. *See id.* ¶¶ 492–97. Under this theory, plaintiffs seek statutory damages for Mugshots's alleged failure to: (1) disseminate appropriate notice to people to whom it provides these reports; (2) require recipients to certify that they have provided required disclosures to the consumer before Mugshots will

provide information for employment purposes; and (3) take adequate steps to ensure that the posted information is accurate (in plaintiffs' telling, much of the information Mugshots posts is either outdated or simply false). *See id.* ¶¶ 477–507.

In its motion to dismiss the complaint, Mugshots retorts that plaintiffs' alleged injuries are all caused by the distribution of already-public information, and asserts that such distribution constitutes protected First Amendment expression. *See generally* Def. Br. at 5–13.

## ARGUMENT

## I.   STANDARD FOR A MOTION TO DISMISS

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiffs, and accept all well-pled factual allegations as true. *See, e.g.*, *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether a claim is plausible, the Court is not bound by a plaintiff's legal conclusions. *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991). The purpose of a Rule 12(b)(6) motion is merely to determine whether a particular legal formula can justify relief based on the alleged facts. *See Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 824–25 (7th Cir. 1999).

## II.  MUGSHOTS'S ARGUMENTS DO NOT IMPLICATE THE FCRA

Mugshots spends nine pages arguing that the First Amendment categorically protects its conduct. However, those arguments turn out to be irrelevant to the plaintiffs' FCRA claims: even taken at face value, Mugshots's arguments do not preclude applying the specific provisions of the FCRA under which the plaintiffs seek relief.

Mugshots's basic claim is that the First Amendment grants it an "unfettered" right to disseminate truthful arrest records. Def. Br. at 9. According to Mugshots, this boundless right defeats the application of any statute that would penalize or restrain such speech. *See id.* at 5–13. Critically, however, Mugshots never identifies any particular provision of the FCRA that, in its view, imposes this kind of improper restriction. In fact, its constitutional arguments do not even *mention* the FCRA. *See id.* As a result, the only way to know which statutory provisions are potentially at issue is to examine the plaintiffs' complaint.

According to the complaint, plaintiffs seek damages for Mugshots's violations of three sections of the FCRA: section 1681b(b) and sections 1681e(b) and (d). *See* Pl. Am. Compl. ¶¶ 477–507. Those sections set forth three general requirements for how consumer reporting agencies must operate. Section 1681b(b) requires that a consumer reporting agency provide recipients of consumer reports a summary of the consumer's rights, and obtain a certification from the recipient that it (the recipient) has provided and will provide the consumer with certain notices—and that it will not use the report in violation of equal-employment-opportunity laws. *See* 15 U.S.C. § 1681b(b)(1). Similarly, section 1681e(d) requires a credit reporting agency to notify the recipient of a consumer report of the recipient's obligations under the FCRA. *See* 15 U.S.C. § 1681e(d)(1)(B). Finally, section 1681e(b) requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer report. *See* 15 U.S.C. § 1681e(b).

On their face, none of these provisions precludes an entity like Mugshots from collecting and publishing arrest records or other information that falls within the definition of a consumer report. Rather, the provisions merely require that Mugshots follow certain, simple procedures to ensure that the information it distributes is accurate, and not misused. Mugshots, of course, does

not allege that these procedural requirements themselves violate the First Amendment. *See generally* Def. Br. at 5–13. And its reliance on cases that discussed the general right to publish information confirms that its challenge should not be construed to relate to the FCRA at all. *See generally id.* Simply put, *none* of the FCRA provisions under which the plaintiffs here seek relief actually restrains speech.

In fact, Mugshots's repeated assertion that the First Amendment gives it a broad right to publish *truthful* information co-exists quite comfortably with the portions of the FCRA on which plaintiffs rely. The whole point of section 1681e(b), for example, is to mandate that the information distributed by consumer reporting agencies is accurate. *See* 15 U.S.C. § 1681e(b). Indeed, as courts have repeatedly held, liability under that section arises where a reporting agency publishes *inaccurate* information. *See, e.g.*, *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008); *Cassara v. DAC Serv., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002); *see also Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996); *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 39 (D.C. Cir. 1984). Thus, Mugshots's claim that the First Amendment gives it an "unfettered" constitutional right to publish "truthful" information in no way implicates the FCRA, or precludes its application in this case. The FCRA provisions on which plaintiffs rely do *not* prohibit or penalize the dissemination of truthful information.

This type of careful parsing of Mugshots's claims presents the most appropriate way for the Court to resolve this matter. It is a well-established legal principle that the Court should not pass on a constitutional question unless that question is squarely presented, and is unavoidable.

*See, e.g.*, *Bhd. of Locomotive Eng'rs and Trainmen v. Union Pac. R.R.*, 522 F.3d 746, 750 (7th Cir. 2008) ("[I]t is a fundamental rule of judicial restraint that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable." (internal citation and quotation marks omitted)); *see also Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) ("It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.").

Coincidentally, adopting this type of analysis also carries another appreciable benefit. Before the Court can decide whether applying the FCRA to Mugshots is constitutional, the Court would have to first resolve the threshold issue of whether, by its own terms, the FCRA even applies to Mugshot's conduct. That question is not straightforward, and would benefit from more factual development.

The FCRA's provisions apply only to "consumer reporting agencies"—that is, entities that sell "consumer reports." 15 U.S.C. § 1681a(d), (f). As alleged by plaintiffs, Mugshots's conduct satisfies some—but not all—of the elements by which Congress defined those terms. For example, Congress defined a consumer report as the "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness[], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," when that information "is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, employment, or other authorized purpose. *Id.* § 1681a(d). The arrest records that Mugshots distributes may be information "bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d). And Mugshots may expect this information to be

used for the enumerated purposes.  Nonetheless, it is not entirely clear that Mugshots's primary business model—that of charging consumers money to *remove* information—falls within the ambit of what Congress envisioned when it defined the conduct that makes an entity a credit reporting agency in the first place.  By recognizing that the FCRA is not even implicated in Mugshots's constitutional challenge, the Court can reserve the question of the FCRA's applicability until there is a more fulsome factual record.

Simply put, recognizing that Mugshots's First Amendment claims do not implicate the FCRA, or preclude its application, is the most analytically coherent way to resolve Mugshots's motion.  Mugshots's ultimate liability under the FCRA should be resolved as a merits question, not on a motion to dismiss.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny Mugshots's motion to dismiss at least with respect to Counts VI and VII of plaintiff's amended complaint, and permit litigation over those counts to proceed to the merits.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JONATHAN F. OLIN
Deputy Assistant Attorney General

MICHAEL S. BLUME
Director

ANDREW E. CLARK
Assistant Director

 s/ Alexander V. Sverdlov
ALEXANDER V. SVERDLOV
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-0138
Fax: (202) 514-8742

November 10, 2016                    Attorneys for Defendants